[S. F. No. 17526. In Bank. Dec. 2, 1947.]

NATHAN MANN, Respondent, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA et al., Appellants.

Robert W. Kenny, Fred N. Howser, Attorneys General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Lloyd W. Dinkelspiel, Louis Heilbron and Heller, Ehrman, White & McAuliffe for Respondent.

CARTER, J.—Defendants, the Board of Medical Examiners of the State of California, and the members thereof, appeal from a decree in mandamus directing the annulment of an order made by the board denying petitioner's application for a direct reciprocity license to practice medicine and surgery in this state.

Petitioner studied medicine in the Chicago Medical School from 1932 to 1936, and graduated with the degree of Doctor of Medicine in 1936. He served for a year as an interne in

a Chicago hospital, and was admitted to practice in Illinois in 1937. The same year, after a written and practical examination, he was admitted in Massachusetts, and in 1940, after a written examination, he was admitted in Texas. In 1940, he applied unsuccessfully in this state for a direct reciprocity certificate; in 1941, he applied to take an examination but his application was denied.

In April, 1945, he filed a second application in this state for a direct reciprocity certificate based upon his Illinois license. The board granted his request for a hearing, but thereafter denied his application upon the ground that he had not ''shown to the satisfaction'' of the board compliance with section 2171 of the Business and Professions Code, in that he had ''failed to establish that he completed a resident course of professional instruction at a school approved by'' the board.

On September 13, 1945, petitioner instituted the present proceeding in the superior court, seeking a peremptory writ of mandate to compel his admission to practice in this state by direct reciprocity, or such other and further relief as might be meet and proper in the premises. He alleged, in addition to the facts above stated, that his credentials showed good moral character; that in March, 1944, he was commissioned as an officer in the Army Medical Corps; that on September 15, 1938, he had been appointed to active duty as an acting assistant surgeon with the United States Public Health Service and served as such until about July 1, 1940. He further alleged that up to and including the time of his graduation from the Chicago Medical School, and thereafter, and at the present time, both that college and its graduates fully complied with the standards set by law in this state, and that many of the graduates had been admitted to practice in this state under direct reciprocity without being required to take any written or oral examination for licensure. Issue was joined on these allegations and a full hearing was had.

The court found that petitioner's allegations were true; that the Chicago school at the time of petitioner's attendance and graduation was approved by the board, and that at the time he was admitted in Illinois, Massachusetts, and Texas, the requirements of the medical licensing authorities of those states were ''not in any degree or particular less than those required for the issuance of a similar certificate'' in this state. The court concluded that defendants were without

jurisdiction to deny petitioner a direct reciprocity license to practice medicine and surgery in this state, and that their failure to do so was arbitrary, discriminatory, and constituted an abuse of official discretion. Upon these conclusions a decree was entered directing issuance of a peremptory writ of mandate as prayed.

The main question is that concerning approval of the Chicago Medical School, from which petitioner graduated. Concededly, there was never an express approval of that school. Petitioner's theory, shown by his pleadings and adhered to on the trial of the cause, is that there was an implied or de facto approval of the school by reason of the fact that during the years subsequent to 1920 a number of its graduates were admitted to practice in this state. Stating the contention another way, it is claimed that the administrative practice of the board in admitting graduates of unapproved schools related back and gave a qualified approval to such schools and that this administrative practice was within the authority conferred upon the board by statute.

There are a number of pertinent statutory provisions, found in chapter 5 of the Business and Professions Code dealing with the subject of "Medicine."

Among the general provisions of article 1 are found section 2010: "Whenever any requirement is provided for any certificate, it shall be satisfied in a manner satisfactory to the board," and section 2012: "Whenever any requirement is provided for any certificate relating to a school or hospital, the school and hospital shall be ones approved by the board."

Section 2118 of article 2, entitled "Administration," empowers the board to enter into contracts of reciprocity with other states wherein the standards are not "in any degree or particular less than are the standards of this State."

Article 4, dealing with "Applications Generally" contains, among others, the following provisions:

Section 2168: "*All applications,* except one that is based upon a diplomate certificate issued by the National Board of Medical Examiners of the United States, shall contain . . .

"(a) Testimonials of good moral character satisfactory to the board.

"(b) Each diploma issued by some legally chartered school approved by the board. The requirements of the school shall

have been at the time of granting the diploma in no degree less than those required under this chapter or by any preceding medical practice act at the time that the diploma was granted.''

Section 2171: *"All applicants for any certificate* shall file evidence satisfactory to the board, showing each legally chartered school, approved by the board, in which a resident course of professional instruction was pursued covering the minimum requirements provided for the particular certificate for which the application is filed.''

Section 2173: ''The board shall approve every school which complies with the requirements of this chapter for resident courses of professional instruction and shall admit every applicant to the examination who complies with the requirements provided for the particular certificate for which his application is filed. Nothing in this chapter prohibits the board from considering the quality of the resident courses of professional instruction required.''

Section 2174: ''If any school is disapproved by the board or any applicant for examination is rejected by it, then the school or the applicant may commence an action in the superior court against the board to compel it to approve the school or to admit the applicant to examination or for any other appropriate relief. In such an action, the court has full power *to investigate and decide all facts anew without regard to any previous determination by the board. . . .''* [Emphasis added.]

In article 5, dealing with ''The Physician's and Surgeon's Application'' is section 2190, providing that: ''Every applicant for a physician's and surgeon's certificate shall comply with all the provisions of this article, in addition to the requirements of Article 4, unless the requirement is one applicable to a particular class of applicant for this certificate''; and section 2192, providing that: ''Each applicant shall show by evidence satisfactory to the board that he has attended four resident courses of professional instruction in a school or schools of the United States or Canada, approved by the board. . . .''

Article 11, entitled ''Reciprocity,'' provides in section 2310 that: ''The board shall issue a reciprocity certificate to an applicant to practice a system or mode of treating the sick or afflicted in this State that he is authorized to practice in any other State if it is a system or mode that is recognized

by this chapter or any preceding practice act. Subject to the provisions of sections 2320 and 2321, no examination for any reciprocity certificate shall be required.''

Section 2315 requires that the certificate upon which the reciprocity application is based shall have been issued to the applicant within a period of 10 years immediately preceding the filing of his application.

Section 2316 requires the applicant to inform the board of all institutions at which he has studied and from which he has graduated, and provides: ''The requirements of the college from which he has graduated and the requirements of the medical licensing authority shall not have been at the time his certificate was issued in any degree or particular less than those which were required for the issuance of a similar certificate to practice a system or mode of treating the sick or afflicted in this State at the same time.''

Section 2320 provides that: ''The board may make an independent investigation of the educational qualifications and the character, ability and standing of the applicant. If, after this investigation and any other or further examination or investigation which the board may see fit to make on its own part, it is found that the requirements of the medical licensing authority issuing his certificate were in any degree or particular less than the requirements provided by the law of this State at the date of the issuance of his certificate . . . he will not be entitled to practice in this State without examination.''

Section 2321 requires an applicant whose application is based on a certificate of another state issued more than 10 years previously and who has met all other statutory requirements, to take an oral examination.

In 1943, two new sections were added to the code. Section 2168.5, added to the article on ''Applications Generally,'' provides that: ''Every applicant shall prove that diploma or other evidence of final, successful and entire completion of instruction and training required by a school approved by the board has been issued to him.'' Section 2316.5, added to the article on ''Reciprocity,'' provides that: ''An applicant for a reciprocity certificate shall prove that a diploma or other evidence of final, successful and entire completion of instruction and training required by a school approved by the board was a condition precedent to his admission to

the examination for the license upon which his application for a certificate in this State is based."

From these statutes it will be noted that an applicant, who within the 10 years immediately preceding his application, has been admitted to practice in another state, may apply in this state for a direct reciprocity certificate without requirement of examination; that an applicant whose admission in another state is more than 10 years old may apply in this state for a reciprocity certificate, but will be subjected to oral examination; and that an applicant who has had schooling but not admission in another state may apply to qualify for a written examination. Petitioner seeks a direct reciprocity certificate but also expresses his willingness to take an examination if that course is open to him.

It may also be noted that the several articles dealing with applications in general, for examination, and for reciprocity are consistent in requiring all applicants to present a diploma from some legally chartered school, the requirements of which at the time of granting the diploma were in no degree less than those of this state, and which had been approved by the board. (*Arwine* v. *Board of Med. Examiners*, 151 Cal. 499 [91 P. 319].)

The board, in granting petitioner's request for a hearing, gave him opportunity to present the issue whether the Chicago Medical School had been approved. That school was organized in 1919 as successor to the Affiliated Colleges, Chicago Hospital College of Medicine, and Jenner Medical School. In 1924, there was some reorganization and the name became Chicago Medical School.

During the trial the board attempted to place in evidence certain of its records which had not been introduced at the hearing before it. This data, after being marked for identification, was rejected. The board showed, however, that in February, 1924, it passed a motion, based on reports on file, that no credentials of any nature should be accepted from certain schools, including the "Chicago Hospital College of Medicine."

The board's medical directory for the year 1945 lists existing, merged, and extinct schools under a key table. Existing recognized schools appear in blackface type. The Chicago Medical School is listed in lightface type, with two asterisks which denote that it is under the classification, "Reported not acceptable for licensure by many of the State licensing Boards, or not approved as a medical school by the Council

on Medical Education of the American Medical Association.'' The board's annual directories have at all times similarly classified the school. The board has never expressed approved it.

The additional proof offered by the board and rejected by the trial court, showed further acts by it in disapproval of the school, its disapproval by the American Medical Association, and data indicating the justification therefor; also board minutes of June 20, 1927, wherein the board by resolution apparently disapproved the school for the second time. The general objection to this evidence was that it had not been introduced at the informal hearing which the board accorded petitioner, and the objection was sustained. To the admission of certain documents was added the objection that they were hearsay, and that the school mentioned in the resolution of 1927 was not identified as the school of petitioner's graduation. As against the general objection the ruling appears at least in part to have been erroneous. For example, the resolution contained in the board's minutes was certainly within its knowledge and tended to disprove petitioner's allegations. Despite the general limitation upon the utilization by the board before the superior court of material not offered in evidence at the board hearing (see 42 Am.Jur. pp. 464-466, § 130), there were some matters of which knowledge might be taken (*McPheeters* v. *Board of Medical Examiners*, 74 Cal.App.2d 46 [168 P.2d 65]; *Rich* v. *McClure*, 78 Cal.App. 209, 213 [248 P. 275]; *Benton* v. *Industrial Acc. Com.*, 74 Cal.App. 411, 415 [240 P. 1021]; *Anderson* v. *Board of Dental Examiners*, 27 Cal.App. 336, 339 [149 P. 1006]). However, it is unnecessary here to pass upon the admissibility of each item of the rejected proof as against the general and specific objections, because even without such data, the express disapproval of the school by the board was established.

In support of the contention that despite the express disapproval of the school by the board its acts showed a de facto or qualified approval, petitioner testified, as did other applicants, to their opinion that the school maintained a standard which required its acceptance by the board, that students had been led by school bulletins to believe that a diploma would qualify them to seek reciprocity in this state, and that the 1920 rules of the board were applicable and provided for approval of extra state schools when all the

educational requirements of the California law were fulfilled.

Petitioner claimed that in the medical directory there were listed over a thousand graduates of nonapproved, extinct, or merged schools, who had been admitted to practice in this state. However, the circumstances of these admissions were not shown, so the mere fact of listing is of little help.

Strongest reliance was placed by petitioner upon the fact that nine graduates of his school had been admitted to practice in this state, as shown by case histories placed before the court. He asserts that these nine admissions establish a de facto or qualified approval of the school, sufficient to support the trial court's finding of approval. The case histories are as follows:

A Jenner graduate of 1912 was granted a reciprocity certificate in 1927, after his application had been once denied. He was required to take an examination, not because his out-of-state license was too old, but because the board found his qualifications did not conform to California requirements. The minutes of the board showed: "Dr. R. when informed of the denial of his application, signified his intention of filing a new application, outlining his additional work, and coming under the oral provisions of the law."

A 1917 graduate was admitted after oral examination in 1922, 16 months before the 1924 resolution disapproving the school. The board minutes show "that reciprocity certificate be issued [to the graduate] based upon his certificate issued by the Illinois Board, when considered in conjunction with the granting of a First Lieutenant's commission in the Medical Corps of the United States Army after an oral examination, followed by service in the A. E. F."

A 1916 graduate who applied for a reciprocity certificate in 1923 was rejected because of the "low standard" of his school. In 1929, he again applied, showing he was an army captain on duty in a government hospital at San Fernando and filing "various documents to supplement his application. One document was listed as Complete Military Record, including Citation for Bravery under a heavy gas bombardment in St. Mihiel Sector." He was granted a certificate after taking an oral examination.

A graduate of 1927 applied for admission that year and his application was denied. On reconsideration, he was permitted to take a written examination which he failed to pass. In 1934, he was admitted after examination.

A graduate of 1934 was admitted in 1935 after written examination.

A graduate of 1928 was granted a reciprocity certificate in 1941, after a written examination required because of deficient grounding.

A 1926 graduate applied in 1943 to take an examination looking to issuance of a reciprocity certificate. His application was denied, but in 1944 he was successful in a mandamus proceeding to compel the board to permit him to be examined.

A graduate of 1916 was denied a reciprocity certificate in 1920 on the ground that his school "did not appear on the list of schools as qualifying [him] for a license to practice in the State of California." Twenty-four years later, in 1944, he sought writ of mandate in the superior court, and had judgment declaring that the board was without jurisdiction in 1920 to deny his application, and ordering correction of the error.

A graduate of 1923 was admitted in 1925 without examination.

It will be noted that only in the case last cited was there an admission by direct reciprocity, without examination, and counsel for petitioner concede that "the admission of one or two applicants from the school might be subject to the contention that the Board was guilty of an error in slighting its statutory obligation." Six of the graduates were admitted after examination, and in three instances exceptional circumstances were shown. The other two admissions were under compulsion of writ of mandate, one of them to correct an error made in 1920.

It is apparent that the action of the board over the 25 years from 1920 to 1945 does not show such a consistent course of admission of graduates of the school as to establish a de facto or qualified approval. It shows only isolated cases of admission, for the most part under exceptional circumstances. The formal and deliberate action of the board in disapproving the school could not be nullified by less formal or deliberate action, nor could nullification be established except by the strongest kind of showing, clear, convincing, and unequivocal. There was no such proof in this case; there was no substantial evidence to sustain the findings that the school had been approved, or that the requirements of Illinois, Massachusetts, and Texas equaled those of California. The only

substantial showing was that the school had been definitely disapproved. In other words, petitioner failed to sustain the burden resting upon him to prove compliance with the requirements fixed by statute as conditions precedent to the issuance of a reciprocity certificate. (*Arwine* v. *Board of Med. Examiners, supra.*)

It will be noted that section 2168, already quoted, specifies the two major requirements of (1) good moral character testimonials "satisfactory to the board," and (2) graduation from an approved school. Section 2310 provides for the issuance of direct reciprocity certificates and states that "subject to the provisions" of section 2320 no examination shall be required. Said section 2320 permits the board to "make an independent investigation of the educational qualifications and the character, ability and standing of the applicant," and states that "if, after this investigation or any other or further examination or investigation which the board may see fit to make on its own part, it is found that the requirements of the medical licensing authority issuing his certificate were in any degree or particular less than the requirements provided by the law of this State at the date of the issuance of his certificate . . . he will not be entitled to practice in this State without examination."

It appears from the record in this case that prior to 1940, and particularly prior to the amendments of 1943 adding sections 2168.5 and 2316.5 to the code, it was the administrative practice of the board, and it construed section 2320 and companion statutes, as empowering it to make an independent investigation of the qualifications of any applicant and if exceptional circumstances or qualifications were shown, to permit the applicant to take a written or oral examination without regard to the requirement of graduation from an approved school. This practice accounts for the nine admissions above listed and probably for others shown by the directory. It is mentioned in the concurring opinion of Mr. Justice Conrey in *Herzig* v. *Board of Medical Examiners*, 135 Cal.App. 41 [26 P.2d 513], where a writ of mandate was denied an applicant because his school had been disapproved by the same resolution of 1924 which disapproved the Chicago Medical School.

This administrative practice of admitting graduates of unapproved schools to examination in cases of a showing of exceptional circumstances which in the opinion of the board

justified such action was apparently discontinued about the year 1940. At least, the board states that after 1940, unless under compulsion of writ of mandate, no applications were accepted from graduates of the Chicago Medical School and petitioner makes no claim to the contrary. Moreover, even if it be assumed that the administrative practice was not discontinued in 1940, there is no showing that petitioner's applications of 1940 and 1941 contained a statement of such exceptional qualifications or circumstances that their denial constituted an abuse of discretion on the part of the board.

Petitioner's application of 1945, upon which the present proceeding is based gave rise to a showing of additional qualifications growing out of government work. The board claimed that this further showing also indicated that petitioner was practicing medicine in this state without a license in violation of law, and upon that ground alone he might be denied a license. The point, however, is immaterial because the license was actually denied on the sole ground of failure to prove graduation from an approved school.

No denial of any constitutional right or discrimination or arbitrary action against petitioner is shown. The plenary power of the state to regulate the practice of medicine is not denied (41 Am.Jur. § 37, p. 166; *In re Admission to Practice Law*, 1 Cal.2d 61, 67 [33 P.2d 829]; *Rosenblatt* v. *California St. Bd. of Pharmacy*, 69 Cal.App. 2d 69 [158 P.2d 199]). In the year 1945, even if the board had not theretofore changed its administrative practice, it would have been powerless to admit a graduate of an unapproved school by reciprocity, with or without examination. This is the unmistakable import of the statutes added to the code in 1943 (§§ 2168.5, 2316.5, *supra*), and the board has so construed and followed them. Section 2168.5 requires "every applicant" to prove completion of instruction in an approved school, and section 2316.5 declares that such instruction must not only be proved but it must also be shown to have been a "condition precedent" to the applicant's admission to examination for the license upon which his reciprocity application in this state is based. Petitioner's Illinois license, upon which he based his application for reciprocity, was not procured upon a showing of graduation from an approved school.

In 1945, therefore, the only course left open to petitioner was that afforded by section 2174, an action in the superior court to compel the board to approve the school from

which he graduated. The present proceeding was not instituted under that statute, although it should have been. In an action under section 2174 the court "has full power to investigate and decide all facts *anew* without regard to any previous determination by the board." Therefore, had this proceeding been brought under section 2174 the court would have had power to receive evidence regardless whether it had been introduced at any prior board hearing and to determine whether the school had or had not been approved or should or should not be approved as of 1936, the year of petitioner's graduation. Both parties would have been afforded greater latitude than that embraced in the procedure followed. (See *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205]; *McDonough* v. *Garrison,* 68 Cal.App.2d 318 [156 P.2d 983].) The board would have been free to introduce the evidence here rejected unless it was barred on other grounds such as insufficient certification, hearsay, or the like.

Furthermore, if successful in securing an adjudication of approval of the school under section 2174, petitioner could also have litigated under that section the question presented by section 2320 whether "the requirements of the medical licensing authority issuing his certificate were in any degree or particular less than the requirements provided by the law of this State at the date of the issuance of his certificate . . . ," thus determining his claimed right to a direct reciprocity certificate without examination.

There is no reason why the present proceeding should not be continued as an action under section 2174, petitioner being permitted, if so advised, to amend his pleadings. If, after a full hearing under section 2174, the court should adjudge the school approved as of 1936, and the standard of the Illinois licensing authority in no degree or particular less than that of this state, then upon further proceedings before the board there would remain for it to determine only the issue of petitioner's good moral character. § 2168).

The judgment is reversed and the trial court is directed to entertain further proceedings in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.