[Civ. No. 16962.   First Dist., Div. One.   Nov. 28, 1956.]

LEVON A. AKOPIANTZ, Petitioner and Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA, Defendant and Appellant.

Hutchinson & Quattrin and S. M. Saroyan for Petitioner and Appellant.

Edmund G. Brown, Attorney General, E. G. Funke, Assistant Attorney General, and Dan Kaufmann, Deputy Attorney General, for Defendant and Appellant.

WOOD (Fred B.), J.—After the denial of his application to the respondent board of medical examiners for a reciprocity physician and surgeon certificate without examination,[1] Dr. Levon A. Akopiantz petitioned the board for a hearing to determine that New York's medical licensing requirements were not less than those of California on July 1, 1949, the date his New York license was issued.

Upon filing this petition, Akopiantz requested a hearing on June 21, 1954, and waived the issuance of the statement of issues prescribed by section 11504 of the Government Code. Upon the hearing, which was held on the date requested, he stipulated that "a hearing may be granted on the petition in lieu of a formal statement of issues."

We look, therefore, to the petition and there find, among others, certain significant issues stated in the form of the following averments: (1) Akopiantz' resident professional instruction equaled or exceeded in duration and attendance and included total and proportionate hours of study of the subjects equivalent to those stated in section 2192 of the Business and Professions Code, and were equivalent in quality, standard and excellence to the minimum requirements specified in articles 4 and 5 (§§ 2165-2195) of chapter 5 of division 2 of said code; (2) the California State Board of Medical Examiners has determined the equivalence of the requirements of the New York licensing authority, with respect to professional instruction in the schools of medicine which petitioner attended, for the purpose of issuing (and did issue) reciprocity certificates to Howard Golden and Leonard S. Lazaroff in 1945 and 1946, respectively.

These allegations, it is apparent, were designed to meet the requirements of section 2193 of the Business and Professions

[1]He bases his claim upon the fact that on July 1, 1949, the State of New York admitted him to practice upon successful completion of an examination. He received his medical degree at the University of Lausanne, Switzerland, in June, 1941. Lausanne gave him credit for 2432 hours of training elsewhere, including 1251 hours at two schools in Scotland, St. Mungo's College Medical School (October, 1936, to June 30, 1937) and the Anderson College of Medicine (October, 1937, to June, 1938).

Our reciprocity statute applies if the applicant "is authorized to practice in any other state if it is a system or mode that is recognized by this chapter [ch. 5 of div. 2 of the Business and Professions Code, §§ 2000-2497] . . ." It declares that "[s]ubject to the provisions of sections 2320 and 2321, no examination for any reciprocity certificate shall be required." (Bus. & Prof. Code, § 2310.) Specific requirements are imposed by several sections of said chapter 5, particularly including sections 2316, 2316.5, 2317, 2192 and 2193 of the code.

Code as it read on the day[2] (July 1, 1949) petitioner received his New York license: "An applicant, whose application is based on a diploma issued to him by a foreign medical school *approved* by the board, except a Canadian school, shall furnish documentary evidence, satisfactory to the board, that: (a) He has completed a resident course of professional instruction in an *approved* medical school or schools *equivalent* to that required in this article [§§ 2190-2195] for a physician and surgeon applicant." (Emphasis added.) These were basic California requirements for a foreign medical school graduate who applied for examination in this state on July 1, 1949. They were made applicable to Akopiantz' request for a reciprocity certificate (without examination) by the provisions of sections 2316, 2316.5, 2317 and 2320 of the Business and Professions Code.

The respondent medical board found: (1) "It has not been shown that said resident professional instruction described . . . in Finding . . . III[3] hereof equaled or exceeded in duration and attendance and included total and proportionate hours of study of the subjects of instruction equivalent to those stated . . . in Section 2192 of the Business and Professions Code and were in all respects equivalent in quality, standard, and excellence to the minimum requirements specified in Articles 4 and 5, Chapter 5 [§§ 2165-2195], Division 2 of said Code." (Finding IV); and (2) that "credit given at St. Mungo's College Medical School and the Anderson College of Medicine hereinabove referred to in Finding III, was for work completed in extramural medical schools, which are schools unapproved by the Board of Medical Examiners of the State of California. Extramural schools were expressly disapproved by the Board of Medical Examiners of the State of California as of the date of October 1, 1939." (Finding VII.)

---

[2]See section 2193 as amended by Stats. 1941, ch. 751, p. 2287. The 1949 amendment of this section (Stats. 1949, ch. 530, p. 930) did not take effect until October 1 of that year.

[3]In Finding III the board found that New York admitted applicant to its examination upon proof of completion of four resident courses aggregating in excess of 4000 hours (etc.) from the University of Lausanne and that he was admitted to advanced standing at Lausanne upon a showing of attendance at resident courses at the following medical schools for the periods indicated:

| | |
|---|---|
| University of Cambridge | 10/1/38 to 6/30/39 |
| St. Mungo's College Medical School | 10/1/36 to 6/30/37 |
| Anderson College of Medicine | 10/1/37 to 6/30/38 |
| Western Infirmary | April to June, 1938. |

Thus, it happens that the board found against Akopiantz upon the two major issues. Either finding, unless unsupported by substantial evidence in the light of the whole record, would support the denial of his request for a reciprocity certificate without examination. The board used only one of them. In its "determination of the issues" it said merely that the "application for a reciprocity certificate should be denied on the basis that he is a foreign graduate, trained in part in an unapproved school pursuant to the provisions of section 2193 of the Business and Professions Code . . ." Then followed the "order," expressly denying the application for a reciprocity certificate without specifying the reason or reasons for the denial.

The conclusion seems inescapable that the board denied the application solely upon the ground that the St. Mungo's and Anderson schools were "unapproved," not upon the ground that the resident instruction received at the foreign medical schools was not the "equivalent" of that required by sections 2190-2195 of our code.

However, both findings are material to the inquiry in this proceeding. Even if the court were to determine that the foreign schools have been approved by the board, the board would have no authority to issue the requested reciprocity certificate if the court determines that the evidence supports the board's finding that the foreign instruction was not the "equivalent" of California requirements.[4]

The trial court made two findings:

(1) That the applicant "has not established that he is qualified educationally for a reciprocity certificate, under section 2310 of the Business and Professions Code"; and

(2) That the "petitioner has sufficient educational training and experience to qualify for an examination under" section 2193. Upon the basis of finding Number 2, the court directed the board to give Akopiantz an examination under section 2193 of the code and, if he passes, to license him as a physician and surgeon in this state.

These findings seem inconsistent; irreconcilably so. One

[4]When, as in this case, the administrative action under review is the denial of a permit, license or certificate (as distinguished from the suspension or revocation of a permit, license or certificate previously granted), "the trial court should not reweigh the evidence, and its sole function is to determine from a review of the record, whether there is sufficient evidence to sustain the ruling of the board." (*Southern Calif. Jockey Club* v. *California etc. Racing Board*, 36 Cal.2d 167, 175 [223 P.2d 1]. See also *McDonough* v. *Goodcell*, 13 Cal.2d 741, 746-749 [91 P.2d 1035, 123 A.L.R. 1205].)

says the applicant has not shown he is "qualified educationally" for a reciprocity certificate; the other, that he has sufficient "educational training and experience to qualify" for the examination. In either case the educational requirement (resident instruction "equivalent" to California requirements) is identical, the only difference being that if Akopiantz were applying to take the examination he need not show that his foreign schools were "approved" by the board.[5]

Each of these findings should be read in the light of the only type and quality of education that was involved, a "resident course of professional instruction" at a "medical school,"—a course "equivalent to that required" by our statute "for a physician and surgeon applicant" (§ 2193). As thus read, one finding says that the applicant's foreign school instruction was equivalent; the other, that it was not. Both can not stand. Each cancels the other out, leaving no support for the order appealed from or any part of it.

The board, which has appealed from that part of the order which directs that an examination be given (Akopiantz has appealed from the whole of the order) would have us interpret finding Number 2 as determining that Akopiantz' training and experience in residence at certain hospitals in this country after graduation at Lausanne, when added to his foreign school instruction, measure up to the requirements of section 2193. We do not find a satisfactory basis for such an interpretation. Under any theory the possibility remains that the second finding deals with the same type of instruction as the first and thus leaves the findings in such a state of uncertainty as to furnish inadequate support for the order or any part of it.[6]

[5]Section 2193, which specifically applies to a foreign school graduate seeking a California examination, was amended in 1949, effective October 1, 1949 (Stats. 1949, ch. 530, p. 930), to delete the former requirement that the school or schools be "approved," but to retain the requirement that the applicant "furnish documentary evidence, satisfactory to the board that: (a) He has completed in a medical school or schools a resident course of professional instruction equivalent to that required in this article for a physician and surgeon applicant."

The Legislature gave emphasis to this requirement by inserting this clause toward the end of the section: "Nothing contained in this section shall prohibit the board from disapproving any foreign medical school nor from denying the application if, in the opinion of the board, the instruction received by the applicant or the courses were not equivalent to that required in this article for a physician and surgeon applicant."

[6]The question of Akopiantz' right to take the examination does not appear to be a matter for judicial determination in this proceeding.

It would become such under section 2174, Business and Professions Code, only if he had applied for an examination and the board had

If this case is again tried, the present difficulty can be avoided if the trial court will couch its findings in specific terms, e.g., by declaring as to each significant finding of the board (clearly identified by subject matter or paragraph number) that it is, or is not, supported by substantial evidence in the light of the whole record.

█ We do not undertake to further define the issues upon a new trial but do state that, as concerns the review of the board's disapproval of the medical schools Akopiantz attended, this may be treated as a proceeding under section 2174 of the Business and Professions Code. (See *Mann* v. *Board of Medical Examiners*, 31 Cal.2d 30, 41-42 [187 P.2d 1].)

The order is reversed and the cause remanded for such further proceedings as may not be inconsistent with the views herein expressed, each party to bear his own costs of appeal.

Peters, P. J., and Bray, J., concurred.

---

rejected it. It does not appear that the board has as yet rejected such an application.

In his petition to the board Akopiantz specifically sought a reciprocity certificate without examination.

The prayer of the petition asked for that and, though it also asked for ''such other relief as may be meet and proper,'' our examination of the transcript of the hearing before the board does not indicate that at the hearing Akopiantz expressed a desire for an examination. These facts and the silence of the board's decision on this subject indicate that the board was unaware of the possibility that the petition might embrace a request for an examination.

This would not prevent the court from referring back to the board the question of Akopiantz' eligibility to take the examination should it appear upon a new trial meet and proper to do so.

The fact that the court's finding Number 2 was outside the issues does not, of course, remove that finding from the record nor resolve the conflict between it and finding Number 1.