[Civ. No. 19018.   First Dist., Div. One.   Mar. 15, 1961.]

LEVON A. AKOPIANTZ, Appellant, v. BOARD OF MEDI-CAL EXAMINERS OF THE STATE OF CALI-FORNIA, Respondent.

Wallner & Miller and Charles J. Miller for Appellant.

Stanley Mosk, Attorney General, and Charles A. Barrett, Assistant Attorney General, for Respondent.

BRAY, P. J.—Petitioner appeals from a judgment denying his petition for writ of mandate to compel the Board of Medical Examiners to issue to him without an examination a reciprocity certificate to practice as a physician and surgeon. Petitioner also purports to appeal from the order denying new trial.[1]

### QUESTIONS PRESENTED

1. Did petitioner meet all statutory requirements?

2. Has petitioner been denied the constitutional guarantees of due process and equal protection of the law?

3. Should approval of the schools attended by petitioner be ordered?

4. Did the court err in denying a motion for new trial?

### RECORD

In February 1953, petitioner filed an application with the board for a reciprocity certificate without an examination,

---

[1] As we have held, time after time, that an order denying new trial is reviewable on appeal from the judgment, and that such order is not appealable, the purported appeal from the order must be dismissed.

authorizing him to practice as a physician and surgeon under the laws of this state, and directing the board to approve retroactively St. Mungo's College Medical School and Anderson College of Medicine. His application was based upon a license granted him by the State of New York in July 1949, after he had successfully passed a written examination there. The application further showed that the applicant had received the degree of Doctor of Medicine from the University of Lausanne (Switzerland) in July 1941, based on his studies at Lausanne from March 1940, through July 1941; Cambridge University (England) from October 1938, through June 1939; St. Mungo's College Medical School (Glasgow, Scotland) from October 1936, through June 1937; and Anderson College of Medicine (Glasgow, Scotland) from October 1936, through June 1938.[2] The application was rejected by the board upon the ground that two of the schools which petitioner attended (St. Mungo's and Anderson) were unapproved by the board. Also the board claimed that under its regulations all graduates of foreign schools must submit to an oral, clinical, and written examination as a prerequisite to reciprocity licensure. Dr. Akopiantz then requested a hearing before the full board, which was held on June 21, 1954. At the hearing Dr. Akopiantz testified in his own behalf; no witnesses were called by the board. On July 1, 1954, the board issued its written decision, denying the application. In its decision the board found that Dr. Akopiantz met all of the statutory requirements for issuance of the requested certificate, save and except that the portion of his training received at St. Mungo's College Medical School and Anderson College of Medicine in Glasgow, Scotland, was not "equivalent to the requirements of articles 4 and 5, chapter 5, division 2, of the Business and Professions Code, and further, that said schools were "unapproved" by the Board of Medical Examiners.

Thereafter petitioner petitioned the superior court for a writ of mandate directing the board to issue him a reciprocity certificate. The court, after a hearing, denied the petition. On appeal, this court found that the court's findings were conflicting and remanded the cause for further proceedings. (*Akopiantz* v. *Board of Medical Examiners,* 146 Cal.App.2d 331 [304 P.2d 52].) On the further trial, the superior court entered judgment denying the petition for writ of mandate.

[2]Since graduating from Lausanne, petitioner's medical record is an impressive one. Unfortunately such fact does not offset the requirements of the statute.

### 1. *Petitioner Did Not Meet All Statutory Requirements.*

In our decision in 146 Cal.App.2d 331, we held that in order to be entitled to a reciprocity certificate without taking a written examination, the applicant must have met two requirements, the failure to meet either of which would make him disqualified to receive the certificate: (1) He must have attended for the prescribed period a school or schools approved by the board; and (2) the resident instruction received at such foreign schools must be equivalent to that required by sections 2190-2195, Business and Professions Code. As we there said: ''Even if the court were to determine that the foreign schools have been approved by the board, the board would have no authority to issue the requested reciprocity certificate if the court determines that the evidence supports the board's finding that the foreign instruction was not the 'equivalent' of California requirements.'' (P. 334.) This is the law of the case. (See *Allen* v. *California Mutual B. & L. Assn.,* 22 Cal.2d 474, 481 [139 P.2d 321]; *Gore* v. *Bingaman,* 20 Cal.2d 118, 121 [124 P.2d 17].)

The burden of proving the ''equivalent'' was on the petitioner. (*Mann* v. *Board of Medical Examiners,* 31 Cal.2d 30, 39 [187 P.2d 1]; *Arwine* v. *Board of Medical Examiners,* 151 Cal. 499 [91 P. 319].)    The duty of the trial court was not to reweigh the evidence before the board, but to determine from a review of the record whether there is sufficient evidence to sustain the ruling of the board. (*Akopiantz* v. *Board of Medical Examiners, supra,* 146 Cal.App.2d at p. 334, f.n. 4.)

The trial court found that the findings of the board were supported by the evidence and that although petitioner completed ''quantitatively, partly at an approved school *and partly at unapproved schools,* the total number of units, and in the proportion thereof, required by Section 2192 of the Business and Professions Code'' (emphasis added), it was not shown that ''the resident professional instruction'' received by petitioner ''was in all respects equivalent in quality, standard, and excellence to the minimum requirements specified in Articles 4 and 5, Chapter 5, Division 2 of said Code . . .''

Section 2316.5, Business and Professions Code, provides: ''An applicant for a reciprocity certificate shall prove that a diploma or other evidence of final, successful and entire completion of instruction and training required by a school approved by the board was a condition precedent to his admis-

sion to the examination for the license upon which his application for a certificate in this State is based."

The schools which petitioner attended, which attendance was necessary to meet the quantitative requirements of the code, and which were not approved by the board, are St. Mungo's College Medical School, the Anderson College of Medicine (these schools are referred to as "extra-mural schools" of Scotland), and the University of Lausanne (Switzerland). It is conceded that no formal recognition of these schools has ever been made by the board. The board's minutes of October 19, 1939, showed that a report of the college investigation committee was adopted which stated that the extra-mural schools were operating under standards far below those of the regularly approved medical schools of Great Britain and the United States of America. The committee recommended that it be the policy of the board to deny any application based upon medical credits from those schools. The resolution stated that the recommendation was based in part on a report by Dr. Rappleye, Dean of Columbia University, College of Physicians and Surgeons, and adopted by the medical licensing authorities of the state of New York. It further stated that a similar resolution had been adopted by the National Board of Medical Examiners.

On June 9, 1946, the board's minutes show that a motion disapproving all extramural schools of Scotland "as of October, 1939," and finding that the board's records disclose that these schools never had been approved, was adopted. On August 8, 1946, a similar resolution was adopted.

Petitioner contends, however, that the board had indirectly approved these schools and nullified said resolutions because it granted a reciprocity license without examination in 1945 to one Dr. Golden and in 1946 to one Dr. Lazeroff, both of whose medical instruction records had included attendance at the two schools in question. That these two instances did not constitute a nullification of said resolution or an approval of the schools is well illustrated by *Mann* v. *Board of Medical Examiners, supra,* 31 Cal.2d 30. There the board had disapproved the Chicago Medical School. Mann claimed that his attendance at that school should be considered on his application for a reciprocity license because, since its disapproval of the school, the board had granted licenses to nine graduates thereof. The court said: "It is apparent that the action of the board . . . does not show such a consistent course of admission of graduates of the school as to establish a de facto

or qualified approval. It shows only isolated cases of admission, for the most part under exceptional circumstances. The formal and deliberate action of the board in disapproving the school could not be nullified by less formal or deliberate action, nor could nullification be established except by the strongest kind of showing, clear, convincing, and unequivocal." (P. 39.)

Petitioner attempts to avoid the application of the Mann case on the ground that the disapproval of the Chicago Medical School occurred prior to Mann's attendance there, whereas the disapproval of the extramural schools occurred after petitioner's graduation therefrom. This is a distinction without a difference.

Moreover, in *Herzig* v. *Board of Medical Examiners* (1933), 135 Cal.App. 41 [26 P.2d 513], it was held that the board did not abuse the discretion vested in it by denying a reciprocity license without examination to a petitioner who graduated from two certain American medical schools prior to the adoption by the board of a resolution refusing to recognize those institutions, and even though the board had granted, after the adoption of the resolution, reciprocity certificates to holders of diplomas from those same schools.

Moreover, this contention was determined against petitioner in the prior Akopiantz case.

Petitioner also attempts to distinguish the Mann case by contending that the admission of the other doctors might have been in error, while here the board's Credentials Committee plainly noted that it was recommending issuance of licenses to Doctors Golden and Lazeroff because they had completed their work prior to 1939, the date of the board's disapproval, and the committee seemed to believe that attendance at these schools prior to their formal disapproval entitled the applicants to certificates. Also the board had an attorney general's opinion that the resolution disapproving the extramural schools did not have a retroactive effect. Obviously the committee and the attorney general were mistaken. The fact is, as found by the second and third resolutions of the board, that the extramural schools had never been approved by the board. However, whether by mistake or otherwise, we are not compelled to the conclusion that the admission of Doctors Golden and Lazeroff constituted the clear and unequivocal action which the Mann case holds is necessary to nullify the formal resolution of the board. This is true even though the secretary-treasurer of the board wrote a letter to Dr. Golden informing him that his work at Anderson College prior to

October 19, 1939, would be approved. This court as well as the trial court, must sustain the board's action if there is substantial evidence to support its conclusions. (See *Akopiantz* v. *Board of Medical Examiners, supra,* 146 Cal.App.2d at p. 334, f.n. 4.)

There is substantial evidence to show that the 1939 disapproval was not set aside by the admission to practice of the two doctors. At all times the Medical Practice Act has required the affirmative approval of schools in order to qualify their graduates for licensure in California.

Assuming that such action did nullify the 1939 resolution does not help petitioner. On August 8, 1946, after the granting of licenses to the two doctors and prior to petitioner's application, the board adopted a new resolution expressly disapproving the extramural schools. Thus, it clearly appears that petitioner has not met the first requirement laid down in 146 Cal.App.2d at page 333, that on July 1, 1949, when he applied for a license in New York, his medical schools must have been approved by the board.

It appears that it was the practice of the medical board prior to 1939 to issue lists of approved American medical schools, but no formal approval of foreign schools or any list of approved foreign schools was made. All applications for licenses were referred to the board's Credentials Committee, which made the determination even with reference to graduates of foreign schools, as to whether the applicant had the qualifications required by the code. The recommendation of the committee was made to the board, which by vote ratified the recommendations of the committee. This practice did not necessarily constitute an approval of the schools from which the applicants who were granted licenses may have graduated. The lack of approval of the extramural schools alone is sufficient to justify the denial of petitioner's application.

Nor has petitioner sustained the burden of proving the second requirement set forth in the prior Akopiantz case, namely, that the instruction he received at those schools be the equivalent of that required by sections 2190-2195 of the Business and Professions Code. Petitioner has the burden of proving the equivalence. (*Mann* v. *Board of Medical Examiners, supra,* at p. 40.) Section 2316, Business and Professions Code, demands that the requirements of the college attended by the petitioner shall not have been "in any degree or particular less than" California's own requirements.

The board had before it the report of Dr. Rappleye who

inspected the extramural schools in November 1938. The conclusions in his report were that the facilities were inadequate, classes too large, training mostly didactic rather than functional, inadequate numbers of cadavers and no quarters for animals. Most of the instructors were active practitioners who were paid on the basis of the number of students they taught rather than on any salary basis, and were not men specifically qualified in the sciences. According to the report, everyone connected with the approved universities and medical schools was of the opinion that these extramural schools maintained standards below those of the qualified university and medical schools and should be discontinued.

Petitioner states that he testified as an expert before the board to the effect that the instruction he had received was equivalent to the required instruction. He then argues that his testimony was binding on the board, and must prevail over the Rappleye report. ▉▉ The trier of the fact is the exclusive judge of the credibility of witnesses and may reject *in toto* even uncontradicted evidence by taking into consideration the bias and motive of the person testifying. (*Odenthal* v. *Lee* (1952), 113 Cal.App.2d 666, 669 [248 P.2d 937]; *Beeler* v. *Plastic Stamping, Inc.* (1956), 144 Cal.App.2d 306, 308 [300 P.2d 852].) ▉▉ Moreover, there was testimony given by petitioner himself which showed the calibre of the extramural schools, e.g., the schools did not have extensive research facilities, the students only took examinations at the end of the course rather than every four or six weeks, and most importantly that his instruction at Lausanne was at an extremely accelerated pace. On the basis of the last evidence alone the board in its discretion could reasonably have concluded that because the petitioner purported to take some 3,743 hours' study in a period of 52 weeks at Lausanne the quality of the medical instruction obtained by petitioner was not up to the standards of instruction in this country and Canada.

▉▉▉ Petitioner contends that he is entitled to a reciprocity license because he was licensed to practice medicine by the New York authorities July 1, 1949. Section 2316 requires not only that the requirements of the college be the equivalent of those required in this state but also that the requirement of the medical licensing authority (the State of New York) be the equivalent of those required here at the time of the issuance of the certificate by the other state. Obviously the Legislature in providing for the issuance of reciprocity licenses,

without further examination, intended that the applicant show that he had the requisite instruction in both quantity and quality, and if the applicant relied upon a medical license from another state, he must show that in taking the examination in the other state he then had the qualifications which would have permitted him to take an examination here. Admission to practice in another state does not *per se* qualify for a reciprocity license in California. Sections 2316 and 2317 are clear that the controlling date is the date when the applicant was issued a license in the other state. On July 1, 1949, petitioner could not have qualified to take an examination for a medical license in California. At that time section 2193 required that to take the examination the applicant must have taken the required medical training in and had graduated from an approved school.[3] Not only were the extramural schools then and now not approved by the board but the University of Cambridge and the University of Lausanne likewise were not approved. Thus it appears that the New York standards in July 1949, were not the equivalent of the California standards at that time.

Petitioner urges that because California has granted reciprocity to a number of licentiates of the State of New York it thereby recognizes that the standards of New York are comparable to those of California. This result does not necessarily follow. The board is free to determine in each instance whether the applicant can meet the requirements of California and even if it has disregarded, in any instance, the law's requirement that the instruction received by the applicant must have been equivalent to that which would have entitled him to take an examination here, such fact would not permit the board to continue such a mistake nor to disregard the express requirement of equivalence prescribed by law. (See *Mann* v. *Board of Medical Examiners, supra,* 31 Cal.2d 30; *Herzig* v. *Board of Medical Examiners, supra,* 135 Cal.App.2d 41; *Arwine* v. *Board of Medical Examiners, supra,* 151 Cal. 499, 502.)

2. *Due Process and Equal Protection of the Law.*

In Mann, *supra,* the same argument was made as by petitioner here, that because the board had admitted to

---

[3]Effective October 1, 1949, section 2193 was amended eliminating the requirement that for an examination the applicant's school must have been approved here. However, this amendment was not in effect when petitioner obtained his New York license.

practice graduates of the same schools attended by petitioner and had denied him admission to practice, his constitutional rights have been violated. In Mann the court said (p. 41): "No denial of any constitutional right or discrimination or arbitrary action against petitioner is shown. The plenary power of the state to regulate the practice of medicine is not denied (41 Am.Jur. § 37, p. 166; *In re Admission to Practice Law,* 1 Cal.2d 61, 67 [33 P.2d 829]; *Rosenblatt* v. *California State Board of Pharmacy,* 69 Cal.App.2d 69 [158 P.2d 199]). In the year 1945, even if the board had not theretofore changed its administrative practice, it would have been powerless to admit a graduate of an unapproved school by reciprocity, with or without examination. This is the unmistakable import of the statutes added to the code in 1943 (§§ 2168.5, 2316.5, *supra*), and the board has so construed and followed them. Section 2168.5 requires 'every applicant' to prove completion of instruction in an approved school, and section 2316.5 declares that such instruction must not only be proved but it must also be shown to have been a 'condition precedent' to the applicant's admission to examination for the license upon which his reciprocity application in this state is based. Petitioner's Illinois license, upon which he based his application for reciprocity, was not procured upon a showing of graduation from an approved school."

3. *Should the Court Order Approval of the Schools Attended by Petitioner? No.*

Section 2173, Business and Professions Code, provides: "The board shall approve every school which complies with the requirements of this chapter for resident courses of professional instruction . . . Nothing in this chapter prohibits the board from considering the quality of the resident courses of professional instruction required." As we have heretofore shown, the unapproved schools have not complied with the requirements of the chapter, and hence are not qualified to be approved.

4. *Denial of Motion for New Trial.*

Petitioner moved for a new trial, principally on the ground of newly discovered evidence, which he contends required that the court open the case for referral back to the board under the provisions of section 1094.5, Code of Civil Procedure. That section provides that when it appears that there is relevant evidence which, with the exercise of reasonable diligence, could not have been presented to the admin-

istrative agency, the matter should be referred back to the agency for reconsideration in the light of such evidence.

The affidavit of counsel filed in support of the motion discloses that prior to the board hearing petitioner attempted to secure the testimony of Doctors Golden and Lazeroff, but that the same were most uncooperative because of fear of possible retaliation by the board. Counsel, then, after the hearing, located Dr. Leo Fred, a professor of medicine at University of California at Los Angeles Medical School. Dr. Fred first agreed to testify, but then refused on the advice of his counsel, who stated that petitioner was *persona non grata* to the board because of the extended litigation over his licensure.

Finally, petitioner was able to locate Dr. Charles Storch, a New York licensee and graduate of the extramural schools. Dr. Storch's affidavit contains testimony relevant to the issue of the quality of medical education offered in the extramural schools.

It is well-settled that an appellate court rarely interferes with the decision of a trial court on a motion for a new trial on the grounds of newly discovered evidence and that the exercise of the court's discretion in granting or denying a motion for a new trial on that ground should not be disturbed except in a case of manifest abuse. (*Teixeira* v. *Domingos,* 151 Cal.App.2d 380, 384 [311 P.2d 634].)

Coupled with this well-settled principle is the policy of the law that the claim of newly discovered evidence as a ground for a new trial is uniformly looked on by the courts with distrust and disfavor. It is said that public policy requires a litigant to exhaust every reasonable effort to produce at his trial all existing evidence in his behalf. (*People* v. *Loar,* 165 Cal.App.2d 765, 777 [333 P.2d 49].)

The original application of the petitioner for a license was made in February 1953, and the hearing before the Board of Medical Examiners was held on June 21, 1954. The original proceedings in the superior court took place from September 3, 1954, until notice of appeal was filed on June 17, 1955. The decision of the District Court of Appeal setting forth the issues to be determined in the retrial in the superior court was announced on November 28, 1956. It was not until one year later that petitioner with full knowledge of the issues which he had to meet in the superior court, filed a motion to set the cause for trial. The petitioner subpoenaed only one witness. Apparently during all of this time the peti-

tioner had not been attempting diligently to secure the testimony of other doctors and other expert witnesses and it was only when the decision went against him that he attempted to obtain some relevant evidence which would form the basis of the court's granting a new trial. Certainly such lack of diligence is patently evident and no contention can seriously be made that the trial court abused its discretion in failing to grant the motion for a new trial.

The purported appeal from the order denying new trial is dismissed. The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied April 12, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1961.