[Civ. No. 59519. Second Dist., Div. Four. Mar. 22, 1982.]

ALEX E. SZABO, Plaintiff and Appellant, v.
BOARD OF OSTEOPATHIC EXAMINERS, Defendant and
Respondent.

## COUNSEL

Kelso & Young, Calvin M. Young III and Nancy Kelso for Plaintiff and Appellant.

Alexander R. Tobin and David S. Getty for Defendant and Respondent.

## OPINION

**FILES, J.\***—This is an action for a declaration of rights with respect to the application of a regulation of the Board of Osteopathic Examiners providing that all applicants for licenses must have graduated from a school approved by the board. Both the plaintiff and the defendant board moved for a summary judgment. The trial court granted the board's motion, denied the plaintiff's motion and entered a judgment declaring that the defendant board was "entitled to judgment as a matter of law." Plaintiff has appealed from that judgment.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Since the record on appeal is a potpourri of procedural oddities, we begin with a listing of events.

On February 19, 1976, plaintiff filed his unverified "amended complaint for declaratory relief." The record does not contain any other pleading on behalf of plaintiff in this action.

On or about March 3, 1978, the defendant board filed a general denial to the complaint and added seven "affirmative defenses."

On October 29, 1979, plaintiff filed a motion for summary judgment. The motion was accompanied by a declaration of plaintiff stating his professional qualifications as follows: "At all times relevant herein I was approved and authorized by the Federal Government to practice all forms of allopathic and osteopathic medicine in Federal enclaves within the State of California. My education and background are as follows: In 1947, I received the degree of Doctor of Medicine from the State Medical University in Debrecen, Hungary. In 1948, I received a Ph.D. in physiology from said university. In 1956, I received the degree of M.D. Homeopathic Specialty from Freemont Medical College, Los Angeles, California and in 1965, I received the degree of Doctor of Chiropracty from Los Angeles College of Chiropractic Medicine.

"In or about 1973, I received a degree of Doctor of Osteopathic Medicine from Sequoia University in Inglewood, California."

The declaration also stated that sometime after March 20, 1977, the board had denied his application for a license "having determined that Sequoia University was not an accredited school approved by the Board."

On November 10, 1979, defendant board filed its motion for summary judgment. The notice states that the motion would be based upon the declaration of Gareth J. Williams, but no such declaration appears in the record. Accompanying the motion is a copy of a decision of the board dated August 2, 1977, denying plaintiff's application for a certificate upon the ground "that respondent [plaintiff] is not a graduate of an approved college of osteopathic medicine."

Upon this record the trial court made a minute order on November 20, 1979, denying plaintiff's motion and granting defendant's motion.

The judgment entered April 10, 1981, contains two declarations with respect to the rights of the parties, which we discuss separately.

The first declaration is that plaintiff had had an administrative hearing on his application for a physician and surgeon's certificate, after which the board denied the application in accordance with its policy not to accept applicants from schools not approved by the American Osteopathic Association; and that plaintiff had failed to seek a rehearing or judicial review by writ of mandate and therefore the matter was res judicata.

The second declaration was simply "that the action of plaintiff has no merit as to this moving defendant and the moving party is entitled to judgment as a matter of law."

It appears that the issues raised in the trial court were purely issues of law, and that summary judgment was an appropriate means of resolving them. ■ We turn first to the res judicata issue which was raised by the board's "affirmative defense" and which was based upon the record of a decision made by the board on August 2, 1977.

The case law of this state recognizes that some but not all of the decisions of an administrative agency are treated as res judicata. No universal formula for classifying administrative decisions in that respect has been developed. A helpful discussion of the distinction is found in *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731-732 [13 Cal.Rptr. 104, 361 P.2d 712] as follows: "The doctrine of res judicata '. . . is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.' [Citation.] This policy can be as important to orderly administrative procedure as to orderly court procedure. Some administrative determinations, however, differ greatly from court decisions and greater flexibility is required in applying the doctrine of res judicata to them. [Citation.] 'The key to a sound solution of problems of res judicata in administrative law is recognition that the traditional principle of res judicata as developed in the judicial system should be fully applicable to some administrative action, that the principle should not be applicable to other administrative action, and that much administrative action should be subject to a qualified or relaxed set of rules concerning res judicata.' (2 Davis, Administrative Law, 568; [citations].)"

In the present case we have before us a decision of the board which was in one respect purely judicial, in deciding that plaintiff had not met the board's educational requirement for the issuance of a license. As to that matter the doctrine of res judicata seems appropriate.

However, the board's decision was based in part upon the validity of its rule that a license would be issued only to an applicant who had graduated from a school or college approved by the board. The *Hollywood Circle* opinion points out at page 732 that res judicata is not applied to the rule-making power of an administrative agency. For the purpose of this case we assume that the board's decision of August 2, 1977, was res judicata as to the ultimate fact decided, which was that plaintiff did not meet the board's standards for the issuance of a license. Nevertheless, plaintiff, as a person aspiring to accreditation as an osteopathic physician and surgeon, has standing to ask a court to determine the legality of a rule which may affect his future eligibility.

■ Plaintiff asks this court to treat this case as a proceeding for administrative mandate under Code of Civil Procedure section 1094.5, and thereby to rule upon the correctness of the board's decision of August 2, 1977. This we will not do for several reasons: Government Code section 11523 prescribes a 30-day time limit for such judicial review. The present action was filed prior to the administrative proceeding, and plaintiff never amended his complaint to mention it. It does not appear that he mentioned the August 2, 1977, administrative decision at all except in his points and authorities filed October 29, 1979, in support of his motion for summary judgment, and even then he did not bring before the trial court either the administrative decision or the administrative record. The copy of the August 2, 1977, decision which is in the record on appeal was produced by the board on November 10, 1979, in support of its motion for summary judgment. Plaintiff offered neither pleading nor proof in the trial court to support his belated request to convert this case into a proceeding in administrative mandate.

■ Plaintiff makes the further contention that the board lacked power to make a "retroactive application" of its rule requiring that an applicant be a graduate of an approved institution. The rule which was in effect on August 2, 1977, when plaintiff's application was denied was section 1631 of title 16 of the Administrative Code of California, adopted May 20, 1977, which reads as follows:

"(a) No graduate of any school or college of osteopathic medicine shall be accepted or considered for licensure unless said school or college has been approved by the Board.

"(b) Institutions approved by the Board for the giving of resident professional instruction to candidates for examination or licensure as a physician and surgeon by the Board in accordance with the laws of the State of California shall be those institutions specifically designated by the Board at its annual meeting.

"(c) Notwithstanding Sections 1631(a) and (b) of these Regulations, schools and colleges of Osteopathic medicine giving preprofessional courses in physics, chemistry, and biology to students during the identical period the student is taking the regular course of study in medicine and surgery shall not be approved by the Board."

Plaintiff's argument is based upon some history which is discussed in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10]. The pertinent events are these: Following the enactment of the referendum Osteopathic Act of 1962, the Attorney General advised that the Board of Osteopathic Examiners no longer had power to license osteopaths. Accordingly, no such licenses were issued by the board. In 1974 the Supreme Court handed down its decision in the *D'Amico* case, holding that the 1962 act was unconstitutional to the extent that it barred osteopathic graduates from licensure as physicians and surgeons.

Prior to the 1962 Osteopathic Act the applicable rule was that which the board had adopted on May 18, 1955, as follows: "1679. Approved Schools. Institutions approved by the board for the giving of resident professional instruction to candidates for examination or licensure as a physician and surgeon to the board in accordance with the laws of the State of California shall be those institutions specifically designated by the board at its annual meeting held in January of each year at Sacramento, California."

The parties have argued in their respective briefs the question whether rule 1679 should be regarded as though it were in effect during the period from 1962 until the adoption of section 1631 in 1977.[1] We re-

---

[1]California Administrative Code, title 16, article 9, regulation 63 No. 25 declares that section 1679 was repealed on December 11, 1963, effective after 30 days.

gard that question as immaterial. Both rules provided for board approval of institutions which prepared candidates for licensure. Whether the board's accreditation standards and policies under section 1631 were different from those employed under rule 1679 is not disclosed by the record here. The rule adopted May 20, 1977, cannot be regarded as retroactive when it was applied to the board's decision of August 2, 1977.

Nor can it be said, on this record, that it was a denial of due process to apply a rule which had been adopted after plaintiff had obtained a diploma from Sequoia University. Plaintiff has not offered any information as to the kind or quality of education provided by Sequoia University, or as to the kind of training and education which should reasonably be required before a license to practice as an osteopathic physician and surgeon should be issued. We cannot accept plaintiff's abstract proposition that whatever undescribed education he may have had in 1973 must now be accepted as sufficient.

Plaintiff's amended complaint filed February 19, 1976, alleged that the board had adopted a regulation providing that all applicants for licenses must have graduated from a school approved by the American Osteopathic Association. Plaintiff's brief on appeal has cited no regulation which so provides. However, such a policy was stated in the board's decision of August 2, 1977, denying plaintiff's application for a license. Plaintiff's complaint in the present action alleged that this "regulation" was invalid for six reasons. In plaintiff's brief on appeal, he argued only two of those reasons. We treat the other four reasons as abandoned.

One of the alleged defects in the board's regulation or policy is that there is no provision for licensing under a "grandfather clause." By this, we assume, plaintiff means that the board should have adopted a policy whereby he would receive a license upon the showing that he had been allowed to practice in some other jurisdictions, and that he had received some undescribed training in a local institution. No authority is cited for such a requirement, and we know of none.

The other alleged defect in the board's procedure is that it did not allow him to prove that he was qualified to practice in California notwithstanding his lack of a diploma from an accredited school. No authority has been offered which might lend support to plaintiff's the-

ory that the board was required or permitted to disregard the educational prerequisite upon some showing of personal qualification.

In *Mann* v. *Board of Medical Examiners* (1947) 31 Cal.2d 30 [187 P.2d 1] the plaintiff had graduated from Chicago Medical School in 1936, and had been admitted to practice in Illinois, Texas and Massachusetts. He had also served as an officer in the Army Medical Corps, and as an acting assistant surgeon in the United States Public Health Service. In 1945 his application for a reciprocity license in California was denied upon the ground that he had not graduated from an approved school. Plaintiff sought a writ of mandate to compel his admission in this state, which the superior court granted. The Supreme Court reversed, pointing out that Business and Professions Code section 2168 (now §§ 2082 and 2135) required graduation from an approved school.

The Supreme Court said at page 41: "No denial of any constitutional right or discrimination or arbitrary action against petitioner is shown. The plenary power of the state to regulate the practice of medicine is not denied. [Citations]."

*Lay* v. *State Bd. of Osteopathic Examiners* (1960) 179 Cal.App.2d 356 [3 Cal.Rptr. 727], cited by plaintiff, provides no support for plaintiff's contentions here. Lay graduated from the Kirksville College of Osteopathy on August 10, 1946, and that college was approved by the California board January 13, 1947. The board denied Lay's application to take the California examination upon the ground that she had not graduated from an approved school. Lay then brought a mandate proceeding. The evidence received in that proceeding showed that Lay had taken all of the courses required by this state and that the quality of the courses met the requirements of this state, and that the Kirksville school had been entitled to approval during the time of Lay's matriculation. The superior court ordered the board to allow Lay to take the examination, and the Court of Appeal affirmed.

Plaintiff in the present action has made no contention that he did or could show that Sequoia University, the unapproved school he had attended, was comparable to Kirksville College.

*Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124 [40 Cal.Rptr. 171], which is the other case cited by plaintiff, affirmed a

decision adverse to an applicant who had not graduated from an approved school. The record shows that in the course of the administrative hearing Dr. Savelli was permitted to testify as to his experience and the nature and quality of his education. That testimony, though set forth in the opinion, had no bearing upon the decision of the appellate court. The case is not authority for the theory of plaintiff here that the applicant's recital of his education and experience should be considered by the board as an alternative to the requirement of graduation from an approved school.

■ Plaintiff's brief argues that the board is estopped to deny his request for a license by reason of the following circumstances: "The Board was apprised of the fact that from the approximate period 1962 through 1974, they had no authority to act in any manner; that during said period of time appellant and others obtained licenses [sic] from certain schools, believing that they would be licensed to practice after completing their course of study; appellant herein was ignorant and had no reason to believe that graduation from said school would not result in his being given a license to practice osteopathic medicine; and he relied upon this conduct to his injury in that he was denied a license."

Assuming that plaintiff has established that when he entered Sequoia University, he believed that at some future time the board would issue a license upon the basis of that school's diploma, he has not shown or offered to show that such a belief was reasonable. From 1955 to 1963 section 1679 provided for board approval of the institutions giving professional instruction. Nothing in the record shows any reason to expect that in the future the rule would be otherwise. The record contains no indication that the board misled plaintiff. The asserted facts upon which plaintiff relies would not, if proven, establish an estoppel.

The judgment of the trial court reflects that court's view that the plaintiff's contention lacked merit, but the judgment falls short of providing the declaration of rights and duties to which the parties are entitled under Code of Civil Procedure section 1060. The plaintiff in such an action is entitled to a declaration resolving the controversy set forth in the pleading, whether that declaration is favorable or adverse to the contention of the plaintiff. (See *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 947 [148 Cal.Rptr. 379, 582 P.2d 970].)

However it is unnecessary to remand the case for a modification of the judgment. This opinion will serve as a declaration resolving the is-

sues raised here. (See *Jones* v. *Daly* (1981) 122 Cal.App.3d 500, 511 [176 Cal.Rptr. 130].)

The judgment is affirmed.

Kingsley, J., and Woods, Acting P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 26, 1982. Mosk, J., was of the opinion that the petition should be granted.