[Civ. No. 5604. Fourth Dist. May 28, 1957.]

HERMINA GONCALES TEIXEIRA et al., Respondents, v. EMILY L. DOMINGOS et al., Appellants.

Clarence H. Wilson for Appellants.

John H. Machado for Respondents.

BARNARD, P. J.—This is an action to establish a trust with respect to certain real and personal property. Frank G. Domingos and John Domingos, who were brothers and engaged in the dairy business, acquired 400 acres in Tulare County early in 1932. They were both single and their mother, Maria Delfina Domingos, kept house for them. John Domingos died in March, 1932. Thereafter, Frank and his mother continued to live on the ranch and two of the plaintiffs, who were then small children, lived with them for several years. These two are twin sisters and their deceased mother was a sister of Frank and a daughter of Maria Domingos. Through probate proceedings in the estate of John Domingos, his mother, Maria Delfina Domingos, acquired John's half interest in the property in question.

On March 29, 1937, Frank Domingos left for a visit in the old home of the family in the Azores Islands. On the same day his mother, Maria Domingos, signed by her mark a paper claimed to be a deed conveying her interest in this property to Frank. She could not write her name, and she made her mark on this paper in the office of Mr. Freitas, a Portuguese attorney in Hanford. She went to a hospital shortly afterwards and died there on October 6, 1937. Shortly before that date Frank had returned from the Azores and the deed was delivered to him by the attorney. The deed was recorded on October 11, 1937. Frank continued to operate the ranch and invested some of the proceeds in other property. Frank and Emily L. Domingos were married in April, 1943, and Frank died on March 2, 1949. After his death Emily received a deed which had been executed by Frank under date of July 21, 1948, conveying the property to her.

This action is based on the theory that Maria Domingos conveyed her interest in this property to Frank in 1937 in trust, with the understanding and agreement that he would hold title until the twin sisters who were living with the grandmother at that time reached the age of 21 years, at which time her interest in the property would be distributed to her heirs, of which Frank was one. The plaintiff, Hermina Teixeira, was a sister of Frank, and the other plaintiffs are children of a deceased sister of Frank. The defendant in the action is the widow of Frank, who was sued individually and as administratrix of Frank's estate. In one count of the complaint the plaintiffs ask that Emily L. Domingos be held to be a trustee for the plaintiffs as to the property in question. In other counts the plaintiffs sought to quiet their title to the same real and personal property, respectively. In her answer the defendant denied that she held title to such real estate and personal property as trustee, claimed that she had full title to said real estate, and pleaded laches and certain statutes of limitation.

After a trial the court found in favor of the defendant, finding that there was no trust, that Emily held title to the estate in fee simple, and that the plaintiffs had no interest either in the real estate or personal property. It was further found that plaintiffs' right of action is not barred by their laches or by the statute of limitations. Judgment was entered accordingly. In a written opinion ordering findings for the defendant the court stated that he was led to that conclusion by three factors: (1) that the grantee Frank Domingos was not in the United States at the time his mother executed the deed; (2) that the mother had sought independent advice and consulted a lawyer; (3) that the mother, who was a Portuguese lady, had sought the services of an attorney who was also Portuguese, which greatly lessened the probability of a misunderstanding ''on the part of either the person preparing the document or the one at whose request it was prepared.''

Thereafter, the plaintiffs filed a motion for a new trial upon all of the statutory grounds. In support of the motion the plaintiffs filed the affidavits of one M. Teixeira, of plaintiffs' attorney, and of an investigator for plaintiffs' attorney. No affidavits in opposition were filed. At the hearing, after argument of counsel, the motion was submitted. An order was then entered granting the motion for a new trial ''on grounds of newly discovered evidence and error in excluding evidence.'' The court filed a written opinion giving his reasons for grant-

ing the motion, stating that one of the affidavits filed in support of the motion "raises a matter which is so vital to the case that the court feels impelled to grant a new trial"; that in arriving at its original decision the court was greatly impressed by the fact that Maria Domingos presumably had independent advice given by an attorney who spoke her native tongue; that if Mr. Freitas, from whom Maria received her advice, was in fact the attorney for her son Frank at the time she consulted with him then all three presumptions which the court had drawn "are open to doubt and should be fully explored in the court trying the action"; that it may develop that Mr. Freitas was not and never had been the attorney for Frank, but in view of the uncontradicted affidavits "it would appear to this court that the plaintiffs are entitled to have that matter fully explored in this forum"; and that the exclusion of certain testimony of one Cardoza when considered with the relationship between Mr. Freitas the attorney, and Frank Domingos the grantee, "gives further impetus to the court's belief that in the interest of justice, a new trial should be granted in this matter." The defendants have appealed from this order granting a new trial.

It is first contended that the showing made in the affidavits was not sufficient to justify an order for a new trial on the ground of newly discovered evidence. It is argued that the affidavit of M. Teixeira was incompetent as it stated only a legal conclusion and because it was necessarily based on hearsay; that this affidavit did not disclose any new evidence because the affiant is the same person as the Miguel Teixeira who testified at the trial, and counsel could have then questioned him with respect to the matter stated in the affidavit; and that no diligence in procuring the newly discovered evidence was shown since counsel for the plaintiffs knew of the witness Miguel Teixeira some time before the trial.

Mr. Teixeira stated in his affidavit that subsequent to the trial the attorney for the plaintiffs informed him that the court had held that Maria Domingos had sought the independent advice of Mr. Freitas, an attorney who also was Portuguese, and that Freitas was the attorney for Maria. He then stated that Freitas "was not the attorney for Maria Delfina at the time of the making of this deed but was the attorney for her son, Frank G. Domingos, and said (Freitas) had been the attorney for said Frank G. Domingos for some time prior to the making of this deed"; and that he informed the attorney for the plaintiffs of this fact at this discussion. In his

affidavit the investigator stated that he had taken various steps in making diligent search to find anyone who knew whom Freitas represented, and in particular to establish the fact that Freitas was the attorney for Frank Domingos at the time this deed was made; that he was unable to find such persons or ascertain this fact; and that his efforts continued from the time the preparation of the case for trial began and during the time of trial. The attorney for the plaintiffs stated in his affidavit many facts disclosing that he had made great effort to locate anyone who could establish the fact that Freitas was the attorney for Frank Domingos at the time in question; that he was unable to find such evidence; and that he first learned of it after the decision of the case when he was told by M. Teixeira that Freitas was attorney for Frank Domingos and not for Maria Domingos at the time in question.

While the cases hold that a new trial cannot be granted upon the ground of newly discovered evidence where it appears that the evidence was obtainable at the time of the trial, or where a lack of diligence in obtaining such evidence appears, it is also well established that a court has a wide discretion in such a matter; that its ruling will not be disturbed unless an abuse of discretion is clearly shown; that every presumption is indulged in support of the action of the court in passing upon the motion; and that the court's opinion that such evidence would make a different result probable is entitled to great weight. (*Laverne* v. *Dold,* 17 Cal.App.2d 180 [61 P.2d 497]; *Brannock* v. *Bromley,* 30 Cal.App.2d 516 [86 P.2d 1062]; *Carvalho* v. *Lusardi,* 114 Cal.App.2d 733 [251 P.2d 37]; *MacKenzie* v. *Angle,* 82 Cal.App.2d 254 [186 P.2d 30]; *Whitfield* v. *Debrincat,* 18 Cal.App.2d 730 [64 P.2d 960].) In the latter case, the court said:

"The discretion must be reasonably exercised to the accomplishment of justice, and where there appears to be a reasonable or even fairly debatable justification therefor, an order granting a new trial will not be set aside, although a contrary order might not be disapproved or the appellate court might be inclined to take a different view."

The appellants' contention that the evidence referred to in the affidavit of M. Teixeira is not new is based on the statement that M. Teixeira is the same person as the Miguel Teixeira who testified at the trial, it being contended that plaintiffs' counsel could have then asked him about this matter. The respondents state in their brief that M. Teixeira is not

the same person as the Miguel Teixeira who testified, and this statement is not denied although counsel for appellants stated in oral argument that it must be one of the two Teixeiras who testified at the trial. There is nothing in the record which discloses the facts in this regard. There was an ample showing of diligence in attempting to get such evidence and of the inability to do so. The contention that this new evidence stated only a legal conclusion is without merit insofar as present purposes are concerned. The argument that it must be hearsay is based on the fact that one Soares testified that he was the only person present when Maria Domingos made her mark to this deed, except for Mrs. Domingos and Mr. Freitas. Mrs. Domingos and Mr. Freitas were both dead at the time of the trial. It does not appear that this new evidence is necessarily hearsay. Other factors might appear at a new trial which would justify the admission of that evidence. It does appear that the trial court in originally deciding the case was largely influenced by the supposed fact that Maria Domingos had the independent advice of an attorney of her choice, who spoke the same language she did. The evidence given by the witness Soares is somewhat significant in this connection. He testified that on March 29, 1937, he went with Maria Domingos to Mr. Freitas' office; that the paper in question was on Freitas' desk; that Maria had no conversation there with Freitas, and that Freitas did not explain the paper to her; that the paper was blank and the name "Maria Delfina Domingos" was not written on the paper; that Freitas did not write her name or sign as a witness while they were there; that "She made the cross and I sign my name. There was nothing else done to it"; that "All we did was she made a cross, and I signed"; that he and Maria then left the office and went home; and that Frank Domingos had left for the Azores on that same day.

The situation and circumstances were better known to the trial judge than they could be to an appellate court. He felt that the proposed new evidence might change the result and was something which, in the interest of justice, should be fully explored in a new trial. The matter was one with respect to which the court has a wide discretion and it cannot be held, on the record before us, that this discretion was abused. The matter was a serious one, the evidence showed that the circumstances surrounding the execution of the deed in 1937 had been questionable, the new evidence would cast doubt on

the presumptions on which the court had relied, and the trial judge felt that justice required a new trial.

The only other point raised is that the court had committed no error in striking out one question and one answer of the witness Cardoza. In this connection Cardoza had testified that a few days before the death of Maria Domingos she sent for him and he visited her in the hospital; that she asked him to fix up a paper for her saying she wanted it fixed so that the property belonging to her which she got from John should go to her heirs, and suggested that he call an attorney; that he told her that since Frank would arrive in a week or two he would wait and see Frank, and if Frank did not want to do it he would call an attorney; that she replied, ''Yes, but I don't think Frank will catch me alive''; that she began to cry and said she did not want her property to go to Frank because he had plenty and she wanted everything that came to her from John to go to her legal heirs, especially ''those two little twins that lost their mother when they were younger''; that he asked her if she had gotten a paper made and she said that she had made one paper in Freitas' office, that she made a cross and Soares was a witness, and that she did not know what kind of a paper it was; and that she wanted it fixed so that her legal heirs would receive their legitimate shares of her estate. This evidence was admitted as going to the question of her intent.

Cardoza was then asked concerning an earlier conversation he had with Maria Domingos. The appellants argue that this conversation was in the summer of 1936 but the record shows that although Cardoza was asked twice if it occurred in the summer of 1936 he gave no date, merely saying that it was ''one evening, late in the evening.'' As to that conversation he testified that Frank Domingos had asked him to go with him to see his mother; that Frank took a deed out of his pocket and laid it on the table, and told the witness to go into the kitchen and talk to his mother; that they went in the kitchen and the witness told her that this was a deed from her to Frank for the consideration of $300, and that Frank was to take care of her the rest of her life; that Maria refused to sign the deed; that Maria then had an argument with Frank telling him that he was trying to steal something that did not belong to him, and that she would never sign that deed; that Frank then told him ''You can sign as a witness, and I will take you to a Notary, and he'll get one of the witness''; and that he refused to do so, saying ''Your mother

doesn't want to." The witness was then asked "Did she say to him that she wanted her property to go——" and he replied, "She said that Frank was entitled to his share of her share, he would receive his share but no more. She wanted something to go to her heirs, she says, 'in case I die this interest goes to my heirs'." On motion of appellants' counsel this last answer was stricken. The time of this conversation was not brought out but apparently it was not too long before the deed of March 29, 1937, was supposedly executed. While the exclusion of this answer does not seem too important the court apparently thought it was closely connected with the intention of the grantor in this deed, and thus had some bearing on the matter about which the newly discovered evidence was concerned, and that it furnished an additional reason for a retrial of the case. While nothing conclusive here appears, with respect to the final result, we think the record justifies the order made, and that it may not reasonably be held that an abuse of discretion clearly appears.

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.