[Crim. No. 6372.   In Bank.   Mar. 13, 1959.]

THE PEOPLE, Appellant, v. ALBERT ERNEST LOVE, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Doris H. Maier and G. A. Strader, Deputy Attorneys General, and C. Keith Lyde, District Attorney (Butte), for Appellant.

Charles A. Skow and Robert W. Anderson, under appointment by the Supreme Court, for Respondent.

TRAYNOR, J.—By information defendant was charged with the murder of his wife. He pleaded not guilty and not guilty by reason of insanity. On July 18, 1958, a jury found him guilty of murder of the first degree. Thereafter the issue of punishment was tried before the same jury. It was unable to reach a verdict and was discharged on July 22, 1958. A second trial on the issue of punishment before another jury commenced on August 12, 1958, and the jury fixed the punishment at death. Thereafter, defendant was found sane at the time of the homicide. He then successfully moved for a new trial on the ground of newly discovered evidence. The People appeal from the order granting a new trial.

On the trial of the plea of not guilty, there was evidence of the following facts:

Defendant and his wife had been married for eight or nine months before the homicide. They had difficulties over finances and the care of Mrs. Love's 4-year-old son by a former marriage, and defendant had filed an action for divorce. Mrs. Love had threatened to report defendant as a parole violator. About a week before the homicide Mrs. Love and her two children moved to a friend's home. Shortly after noon on the day of the homicide, Mrs. Love, her small son, her friend, and three of her friend's children left the friend's home in Mrs. Love's car. Mrs. Love had several appointments, including one with defendant's attorney, and the others went along for the ride. While the car was parked outside the attorney's office and Mrs. Love was keeping her appointment, defendant passed on the street, spoke briefly to Mrs. Love's friend, and went on. On the way back to the friend's home, Mrs. Love decided to drive to her own house to see if there was any mail. When they arrived the friend checked the mailbox and returned to the car. The motor stalled as they were about to leave, and defendant drove by as Mrs. Love was trying to start it. A few moments later, defendant drove by again in the opposite direction and asked if Mrs. Love wanted a push, to which she replied, "No." In a few moments

he drove by a third time and stopped his car on the opposite side of the street. He shouted to Mrs. Love, ''Say, I want to get that fishing equipment that's in the house.'' Mrs. Love shook her head, and defendant stated, ''Oh, I can't, can't I.'' Defendant then crossed the street with a shotgun, and over the protests of Mrs. Love and the children, shot Mrs. Love at close range. He said, ''All right, you lousy son-of-a-bitching rat, take that.''

After the shooting defendant returned to his car and drove away. He met his attorney and told him that he had just shot and killed his wife and was on his way to the police station to turn himself in. At his request his attorney went with him. At the station he told the officers that he had shot his wife; that they had been having domestic difficulties; that he had warned his wife about writing a letter but that she had written it anyway;* that he should have turned the gun on himself but did not have enough nerve; and that at the time of the shooting, he had held the gun close to his wife's body because he was afraid of injuring the other occupants of the car.

Defendant went to a pawnbroker the day before the homicide and traded an electric razor for the shotgun. About noon on the day of the homicide he took it to the home of his mother and stepfather. His stepfather had told him he wanted a gun to protect his chickens from cats. His mother did not want guns on the premises, however, because she was fearful defendant might commit suicide.

A psychiatrist appointed by the court to examine defendant testified that in his opinion the defendant had the capacity to premeditate and form the intent to kill and that his shooting his wife at short range to avoid injuring others indicated that he was thinking at the time. He also testified, however, that his tests all revealed ''a self-protectively evasive, paranoid, impulse-ridden, extremely hostile, opportunistic egocentric, emotionally explosive, schizoid psychopath, who is actively agitated in a ruminatize, brooding and self-centered fashion,''and that a ''general lack of time perspective and minimal capacity for delay or control of impulses, combined with a psychopathic crude ego integration and immaturity, drive [defendant] to seek constant gratification of his wishes and whims and keep him in a constant state of turmoil, with periodic explosive outbursts of uncontrolled rage.''

*It may be inferred that this letter was one defendant believed his wife had written to his parole officer.

Defendant did not testify at the trial of his plea of not guilty. At the first trial on the issue of punishment he testified and asked the jury to give him the death penalty. He did not testify at the second trial on the issue of punishment, but his testimony at the first trial was introduced as part of the basis for a hypothetical question put to a psychiatrist.

It is against this background that we must assess the trial court's granting of the motion for a new trial on the ground of newly discovered evidence. The basis for its ruling was a material change in the testimony of defendant's stepfather. On July 17th, at the trial on the plea of not guilty the stepfather testified that about a month before the homicide defendant threatened to kill his wife if she did not live with him, stating, "If she doesn't live with me I'll kill the bitch." On August 13th, at the second trial on the issue of punishment, the stepfather testified that he could not remember whether defendant had threatened to kill his wife or himself on the occasion referred to in his earlier testimony. In explanation of his change in testimony he stated that he had been drinking for about two months before the homicide, that he was quite drunk at the time the alleged threat was made, and that he had been drinking at the time he gave his former testimony. For the last two weeks, however, he had been receiving treatment for alcoholism at a state hospital, his memory was greatly improved, and he now knew that he could not state whether defendant had threatened to kill himself or his wife.

Penal Code, section 1181, subdivision 8, provides that a new trial may be granted when "new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable." ▓ The motion is directed to the sound discretion of the trial court, and its ruling will not be disturbed unless an abuse of discretion clearly appears. (*People* v. *Greenwood*, 47 Cal.2d 819, 821 [306 P.2d 427]; *People* v. *Jefferson*, 47 Cal.2d 438, 446 [303 P.2d 1024];

*People* v. *Tallmadge,* 114 Cal. 427, 430 [46 P. 282] ; *Redwood Turkey Hatchery* v. *Meadowbrook Farms,* 152 Cal.App.2d 481, 485 [313 P.2d 146] ; *Teixeira* v. *Domingos,* 151 Cal.App. 2d 380, 384 [311 P.2d 634].) No abuse of discretion appears.

▆ When the stepfather testified at the trial on the issue of punishment he was carefully examined by the prosecution, the defense, and the trial court itself. His testimony at that time fully supports the trial court's conclusion that his earlier testimony that defendant threatened to kill his wife was worthless.

The record also supports the trial court's conclusion that the fact that that testimony was worthless could not have been discovered by the exercise of reasonable diligence before or at the time it was given. Thus direct evidence of that fact only became available after treatment for alcoholism had improved the witness' memory, and there does not appear to be anything that defendant's counsel could have done to establish that fact earlier that he did not do. He had interviewed the witness before the first trial and he cross-examined him at that trial, and it affirmatively appears that it was not readily apparent that the witness had been drinking at the time he testified.

Finally the record supports the trial court's conclusion that the newly discovered evidence was neither merely cumulative nor merely impeaching but was "material to the defendant" (Pen. Code, § 1181, subd. 8) in that it would render a different result probable on retrial of the cause. (*People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29] ; *People* v. *McGarry,* 42 Cal.2d 429, 433 [267 P.2d 254] ; *People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84, 94 [124 P. 692, 1135, Ann. Cas. 1913E 1267] ; *Oberlander* v. *Fixen & Co.,* 129 Cal. 690, 691-692 [62 P. 254].) Thus, the testimony that defendant had threatened to kill his wife if she would not live with him was the only direct evidence of premeditation, and as the trial court pointed out in granting the motion for new trial, it strongly bolstered the circumstantial evidence on which the prosecution also relied. ▆ Defendant's securing the gun from the pawnbroker was consistent with the theory that he wanted it only for his stepfather to protect the latter's chickens, and his having it with him on the afternoon of the homicide was consistent with the theory of a contemplated suicide. His driving back and forth past his wife's car was equivocal. There is no evidence that he knew she would be at her house, and his offer to give her a push to get her car

started is inconsistent with an existing intent to kill her. Thereafter she denied his request for his fishing equipment. Given that denial, the background of hostility, and defendant's ''impulse-ridden . . . , emotionally explosive'' character and ''general lack of time perspective and minimal capacity for delay or control of impulses,'' it is not unreasonable to assume that the homicide was the result, not of deliberation and premeditation, but of a sudden impulse. It was for the trial court to weigh the evidence and consider the inferences that might be drawn therefrom to determine whether or not the elimination of the stepfather's testimony would probably lead to a different result.

There is no merit in the contention that the second jury's selection of the death penalty proves the trial court's conclusion wrong. The jury was instructed that the murder was a deliberate and premeditated killing and was therefore foreclosed from considering lack of premeditation as grounds for inflicting the lesser penalty. Thus it cannot be inferred from the verdict fixing the penalty at death that the stepfather's recanting would not result in a different result on a new trial on the issue of guilt.

There is also no merit in the contention that a new trial should not have been granted on the ground that no affidavits were filed in support of the motion. The relevant facts were all of record before the court. Affidavits restating them would have served no purpose. (Civ. Code, § 3532; *People* v. *Kitchens,* 46 Cal.2d 260, 263 [294 P.2d 17] ; *People* v. *Ives,* 17 Cal.2d 459, 477 [110 P.2d 408] ; *People* v. *Lee,* 9 Cal.App.2d 99, 106 [48 P.2d 1003].)

We are not unmindful of the rule that motions for new trials on the ground of newly discovered evidence are looked upon with disfavor (*People* v. *Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427]), but the ''question as to the effect upon the case of the newly discovered evidence is from its nature peculiarly one that is addressed to the discretion of the trial court, and, of course, should be determined by that court with a full realization of the responsibility involved, and the motion should undoubtedly be granted where the showing is such as to make it apparent to the trial court that the defendant has, without fault on his part, not had a fair trial on the merits, and that by reason of the newly discovered evidence the result would probably be, or should be, different on a retrial.'' (*People* v. *Sing Yow,* 145 Cal. 1, 4 [78 P. 235] ;

see also *People* v. *Shepherd,* 14 Cal.App.2d 513, 518 [58 P.2d 970].)　██　Distrust or disfavor of the motion does not mean "that when the trial court has exercised its discretion and granted a new trial that such action is looked upon with either distrust or disfavor. In fact, it has been said that one of the most prolific causes of miscarriages of justice is the reluctance of trial judges to exercise the discretion with which they are clothed to grant a new trial when the circumstances show that justice would be thereby served. This by reason of the curtailed power of appellate courts to disturb the discretion of the trial court once it is exercised in such matters. It is recognized that despite the exercise of diligent effort, cases will sometimes occur where, after trial, new evidence most material to the issues and which would probably have produced a different result is discovered. It is for such cases that the remedy of a motion for a new trial on the ground of newly discovered evidence has been given." (*Dasso* v. *Bradbury,* 39 Cal.App.2d 712, 716-717 [104 P.2d 128]; see also *Redwood Turkey Hatchery* v. *Meadowbrook Farms,* 152 Cal. App.2d 481, 485 [313 P.2d 146]; *Teixeira* v. *Domingos,* 151 Cal.App.2d 380, 384 [311 P.2d 634].)

The record in the present case reflects a most careful and conscientious consideration of the motion for new trial by the trial court. Having appraised the weight of the evidence and the probable impact of the newly discovered evidence, it very properly showed no hesitance in granting a new trial. (See *People* v. *Borchers,* 50 Cal.2d 321, 330 [325 P.2d 97].)

The order is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., McComb, J., and White, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.