[Civ. No. 21494. First Dist., Div. One. Dec. 21, 1964.]

SOUTH SANTA CLARA VALLEY WATER CONSERVATION DISTRICT, Plaintiff and Appellant, v. ORA JOHNSON et al., Defendants and Respondents.

Sydney S. Johnson for Plaintiff and Appellant.

Charles E. Luckhardt and Rankin, Oneal, Luckhardt, Center, Longinotti & Ingram for Defendants and Respondents.

MOLINARI, J.—Plaintiff water district brought this action to enjoin defendants from impounding water in a dam and reservoir upon their property, thereby withholding from plaintiff water which would otherwise flow into plaintiff's Uvas Dam. The trial court found that the water collected by defendants' reservoir was surface drainage, or "storm" or "vagrant" waters and was not received through any watercourse. Based on this finding, judgment was entered in favor of defendants, giving them the right to impound such water on their property.

On this appeal plaintiff raises several issues, the major one being that the evidence was insufficient to sustain the findings of the court. We shall discuss the facts pertinent to each issue in our separate discussion of the points raised on this appeal. Preliminarily, however, we set out the following facts: Plaintiff, South Santa Clara Valley Water Conservation District, was formed for the purpose of conserving surplus waters. In order to accomplish this purpose, it constructed a dam of 10,000 acre feet capacity on the Uvas Creek. In times of heavy rainfall, the Uvas reservoir impounds surplus waters. This water is then released at certain intervals and allowed to percolate into the underground strata so that it is available in the valley south of the Uvas Dam. Defendants own approximately 1,000 acres of cattle-raising land northwest of plaintiff's district. In order to water the cattle, defendants' predecessor in interest had constructed, in the year 1942, a "stock dam" on the land. In 1959 defendants repaired and enlarged the dam, increasing its capacity to approximately 43 acre feet.

## Sufficiency of the Evidence

The theory on which plaintiff based its right to an injunction was that defendants, as riparian owners, are entitled to use the water which flows on their property to the extent that such use is for the beneficial enjoyment of defendants' property,

and that the quantity of water which defendants' dam impounds is in excess of that allowable use.

In response to these allegations, defendants set up several defenses. The one which was successful in the trial court was based on the theory that defendants' right to impound water was not governed by the law applicable to riparian owners; that defendants were not riparian owners, there being no "watercourse" on defendants' property; rather, that defendants' dam and reservoir collected only vagrant and flood waters, the use of which according to existing law can be unrestricted.

Thus, the crucial issue in the trial court was whether defendants' dam was situated on a "watercourse." The trial court having answered this question in the negative, this appeal turns on whether there is sufficient evidence to justify such a conclusion. Before reviewing the evidence submitted on this issue and the law which is applicable to it, we state the pertinent rules governing the scope of appellate review of an appeal which attacks the sufficiency of the evidence to support the judgment. ▓ As stated in *Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231] : "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." ▓ And again with regard to the specific issue at bench: "The question of the existence of a watercourse is often one of fact to be determined by a jury or the court. If the evidence in that regard is conflicting, the determination of the trial court will not be disturbed on appeal." (*Costello* v. *Bowen,* 80 Cal.App.2d 621, 627 [182 P.2d 615] ; *County of Sierra* v. *County of Nevada,* 155 Cal. 1, 8 [99 P. 371].)

Turning, then, to the law of water, we find a variety of definitions as to what constitutes a watercourse. ▓ In *Los Angeles C. Assn.* v. *City of Los Angeles,* 103 Cal. 461, 464-465 [37 P. 375], we find this definition: "There must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed, sides, or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned

by unusual freshets or other extraordinary causes. It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is dicharged through them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not, in legal contemplation, watercourses." (See *Sanguinetti* v. *Pock,* 136 Cal. 466, 471-472 [69 P. 98, 89 Am.St.Rep. 169].)

However, as to the difficulty of applying this definition, we find the following statement: " 'While it is ordinarily defined as a stream, containing a definite bed, banks and channel, which flows into some other river, stream, lake or the sea, none of those characteristics is an absolute fixed factor. A watercourse may exist even though it serves as a mere channel by means of which a particular watershed is drained, and although it may be dry in certain seasons. . . .' " (*Phillips* v. *Burke,* 133 Cal.App.2d 700, 703 [284 P.2d 809]; *Costello* v. *Bowen, supra,* p. 627.)

Thus, we are left with a somewhat nebulous concept, the only concrete element of which seems to be the requirement of definite bed, banks, and channel. As to the definition of a watercourse which the trial judge applied in deciding in favor of defendants, it appears from the findings that he relied heavily on the concept of the presence or absence of a bed, bank, and channel.[1] The court specifically found that there was no live stream with established banks and bed and channel leading into the said reservoir. Its finding that no name exists for the gullies or ravines leading into the reservoir is immaterial on the issue of the existence of a watercourse. We can find no authority which considers the presence or absence

---

[1]The pertinent findings of the trial court are as follows:

"The Court further finds that it is true that said reservoir as presently existing upon said property has no live stream flowing therein with established banks and bed and that no established channel exists leading into said reservoir feeding the same; The Court further finds that said reservoir is fed only by the runoff of waters in the time of heavy rainfall from the natural drainage of waters resulting solely from said rainfall; and that the drainage of waters into said reservoir is as the result only of waters flowing that may be classed as flood or vagrant waters;

"The Court further finds that no name exists for the gullies or ravines leading into said reservoir and that said gullies or ravines have no natural or established banks or channels in which said water is conducted, and that consequently said dam and reservoir located upon the property of the defendants is not located upon a natural stream but that said dam and reservoir collect only storm or vagrant waters not confined to a stream or watercourse; . . ."

of a name in determining whether a watercourse in fact exists. On the contrary, in the case of *Lindblom* v. *Round Valley Water Co.*, 178 Cal. 450 [173 P. 994], the appellate court reversed the court below and held that an apparently unnamed stream running through a certain North Canyon did constitute a watercourse. The opinion makes no mention of the fact that the stream was nameless.

██ As for the finding that the reservoir "is fed only by the runoff of waters in the time of heavy rainfall from the natural drainage of waters resulting solely from said rainfall," this fact, in and of itself, does not negate the existence of a watercourse because the runoff from the annual rainfall can constitute a watercourse. (*Lindblom* v. *Round Valley Water Co.*, *supra*, p. 453.) ██ The critical factor in determining whether water consisting of the runoff from the usual and recurring rainfall constitutes a watercourse is whether or not it runs in a well-defined channel. (*Lindblom* v. *Round Valley Water Co.*, *supra*, p. 453.) In *Lindblom*, it was held that runoff waters resulting from the usual and annually recurring fall of rain and snow, draining from the surrounding hills into and through a ravine, the bottom of which bore every aspect of a well-defined stream channel, was a watercourse.

Turning, then, to the evidence adduced at the trial on this issue, we find that it consists of testimony, two aerial photographs of defendants' property, and a view by the judge of the *locus in quo*. We analyze, first, the testimony of the witnesses. Mr. Scheidegger, who owns the property adjoining that of defendants and had "been over there [on defendants' property] many times," testified that the water filling defendants' reservoir "comes from the two little creeks that flow into it"; that these creeks are "about a quarter of a mile long"; that "there's [a] well-defined creek bed"; that these creeks "flow continually until, oh, about April, depending on the rains, naturally"; that "Normally they flow every year." Mr. Gwinn, who formerly lived on part of defendants' property; Mr. Gilbert, a surveyor who surveyed defendants' reservoir; and Mr. Todd, an engineer involved in the reconstruction of defendants' reservoir in 1959, all testified unequivocally that the water flowed into defendants' reservoir via two ravines which showed definite channels, and that the water in these ravines flowed when the other watercourses in the area were flowing.[2]

---

[2]All of these named witnesses were called by plaintiff.

Testimony was also adduced from Martell Blair and Mrs. Ora Johnson, two of the defendants and owners of the property in question. Blair, called as an adverse witness by plaintiff (Code Civ. Proc., § 2055), testified as follows: that the water got into the reservoir "from these hills that are back of it"; that the water from these hills flows down two ravines into the reservoir area; that these waters flow only during the rainy season; that they flow as long as "there's water seeping out of the ground"; that if it were not for the dam of the reservoir on defendants' property "the water would go down a normal course"; that that course is "Downhill"; that there are other courses "around there" and that these and the two courses on his property "are flowing about the same time"; that water in the area goes down "through all ravines" during the rainy season; and that "All of this area drains into your Uvas Dam." Mrs. Johnson, called as a witness for defendants, testified: that the reservoir on defendants' property gets its water "Through these courses, when it is raining"; and that "the ravines carry it down."

An analysis of the testimony discloses that there was evidence to support a finding that the principal source of water in defendants' reservoir was that produced by rainfall, and that this water drained from the surrounding hills into and through two ravines. The only conflict in the testimony was on the subject of the period of time in which water flowed in the ravines above the reservoir. There was also testimony by plaintiff's witnesses that the water ran down into and through the two ravines in well-defined channels. This latter testimony was not refuted or contradicted by defendants, nor did Mr. Blair or Mrs. Johnson testify whether the water did or did not flow in a defined stream or channel. The testimony of these defendants, at best, was equivocal on the issue of whether the waters flowed in a well-defined channel. It was not susceptible of the inference that the waters did not flow in a defined stream. If it was susceptible of any inference at all on this issue, an inference could be drawn from the testimony of the two defendants that the water did flow in defined channels. Assuming *arguendo* that the trial court rejected the testimony of plaintiff's witnesses under its prerogative as the trier of fact, and assuming, further, that the trial court did not or could not draw the inference we suggest from the testimony of said defendants, the testimony of all the witnesses leaves the record in the posture where there is no evidence at all on the vital

issue of whether the water in question ran in well-defined stream channels.

Defendants contend that two photographs, plaintiff's Exhibits 1 and 2 "could be the basis of the finding of the Court." Exhibit 1 is an aerial photograph of defendants' ranch, while Exhibit 2 is an aerial photograph of the entire area involved in this case, including the Uvas Dam Reservoir. ▮ Both of these exhibits were introduced in evidence without objection and without any restriction or limitation as to their use. They were, therefore, in evidence for all purposes. (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists,* 227 Cal.App.2d 675, 700 [39 Cal.Rptr. 64]; *Wicktor* v. *County of Los Angeles,* 177 Cal.App.2d 390, 406 [2 Cal.Rptr. 352].) Accordingly, they were not only admitted in evidence as aids to the witness in explaining his testimony, i.e., illustrated testimony of that witness, and as much a part of the witness' testimony as his oral statements (*People* v. *Bowley,* 59 Cal.2d 855, 860 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178]; *St. George* v. *Superior Court,* 93 Cal.App.2d 815, 816 [209 P.2d 823]; 3 Wigmore, Evidence, §§ 790, 792, pp. 173, 178; Witkin, Cal. Evidence, § 314, p. 352), but they were also probative evidence of what they depicted. (*People* v. *Bowley, supra,* p. 860; *People* v. *Doggett,* 83 Cal.App.2d 405, 409 [188 P.2d 792]; Witkin, Cal. Evidence, § 315, p. 354; see McKelvey, Evidence (5th ed. 1944) § 379, p. 668.) Once a proper foundation has been established as to the accuracy and authenticity of a photograph, it may not only be used to illustrate testimony, but also as a silent witness speaking with a certain probative force for itself, and is substantive evidence to be weighed by the trier of fact. (Scott, Photographic Evidence (1942) § 601, p. 476; Gardner, *The Camera Goes to Court* (1946) 24 N.C.L.Rev. 233, 245; McKelvey, Evidence (5th ed. 1944) pp. 663-664.)

Treating the pictures as illustrated testimony of witnesses, we find that Exhibit 1 was used in conjunction with the testimony of Mr. Blair and Mrs. Johnson, and that Exhibit 2 was used in connection with Mr. Gwinn's testimony. Blair testified that the picture was taken in 1952; pointed out the reservoir in question, the location of a house and barn, a row of trees, and the two ravines aforesaid. Mrs. Johnson, on cross-examination, pointed out the reservoir and certain trees above it, stating that one of the watercourses ran under this clump of trees. Mr. Gwinn testified that Exhibit 2 was

taken on June 12, 1956, and pointed out the location of the dam and reservoir in question and the location of the two watercourses.

It is clear that the subject photographs served as illustrated testimony of the witnesses Blair, Johnson and Gwinn, and that they were used to explain such testimony. Accordingly, while they constituted testimony of such witnesses in addition to their oral statements they were, at best, merely cumulative of the oral testimony. Our inquiry, therefore, is whether these photographs, in themselves, constitute independent probative evidence of what they show and whether the trial court could, from what the pictures depict, draw any inference in support of its findings. These photographs, being part of the record on appeal, must be examined by us, as all evidence must be examined. (*Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384].) We are not entitled, however, to weigh the evidence or its effect and value, nor are we entitled to substitute our deductions for those of the trial court where two or more inferences can be reasonably drawn from such evidence, because our power is limited to a determination of whether such evidence is of sufficient substance to support the trial court's finding. (*Estate of Teel, supra,* pp. 526-527; *Linehan* v. *Linehan,* 134 Cal.App.2d 250, 254-255 [285 P.2d 326].) This rule is applicable to photographs. (See *Vaca* v. *Southern Pacific Co.,* 91 Cal.App. 470, 474 [267 P. 346]; *Van Dorn* v. *City & County of S. F.,* 103 Cal.App.2d 714, 718-719 [230 P.2d 393]; *Mattson* v. *Maryland Casualty Co.,* 100 Cal.App. 96, 98-99 [279 P. 1045]; *Sebern* v. *City of Riverside,* 42 Cal.App.2d 701, 703 [109 P.2d 747].)
 It is also the rule, however, that an appellate court can upset a finding based on evidence when the supporting evidence is inherently incredible or improbable, or where it clearly appears that upon no hypothesis whatever is there substantial evidence to support the finding. (*Voss* v. *Friedgen,* 141 Cal.App.2d 135, 137 [296 P.2d 424]; *Murphy* v. *Ablow,* 123 Cal.App.2d 853, 858 [268 P.2d 80]; *Jones* v. *Jones,* 135 Cal.App.2d 52, 57 [286 P.2d 908]; *Postier* v. *Landau,* 121 Cal.App.2d 98, 101 [262 P.2d 565].) Adverting to the subject photographs, we must hold, after examining them, that as a matter of law the things and objects there depicted do not provide any substantial evidence upon which the trial court could have based any reasonable inference in support of its findings. Both of the photographs were taken from

an airplane at such an altitude that the sizes of the physical objects depicted thereon were considerably minimized, thus rendering it impossible, merely by looking at the photographs, to determine whether there were or were not any watercourses on the terrain photographed.

If the trial court's findings are to be sustained at all, in view of the foregoing, they must find their support in the evidentiary effect of the judge's view of the *locus in quo*. Toward the conclusion of the trial, counsel for plaintiff suggested that the court "go out and examine the reservoir and these water courses and the whole situation there." Arrangements for the trip were subsequently made, and on October 19, 1962 the trial judge toured the premises. Counsel for the parties were not present during the tour, but Gwinn, a director of plaintiff district, and defendant Blair were present. At the conclusion of the tour, at the premises, and in the presence of Gwinn and Blair, the judge announced his decision in favor of defendants.

It is clearly the rule in California that when the view of the trial judge is with the consent of the parties (as it was in the case at bench) what is then seen is itself evidence and may be used alone or with other evidence to support the findings. (*Noble* v. *Kertz & Sons Feed etc. Co.*, 72 Cal. App.2d 153, 159 [164 P.2d 257] (see authorities cited therein); *Stegner* v. *Bahr & Ledoyen, Inc.*, 126 Cal.App.2d 220, 225 [272 P.2d 106]; *Gates* v. *McKinnon*, 18 Cal.2d 179, 182-183 [114 P.2d 576].) Within the compass of this rule, it is also well settled that when the trial judge views the premises and a record of what he saw has not been made a part of the transcript on appeal, an appellate court must assume that the evidence acquired by such view is sufficient to sustain the finding in question. (*1st Olympic Corp.* v. *Hawryluk*, 185 Cal.App.2d 832, 837 [8 Cal.Rptr. 728]; *Peckwith* v. *Lavezzola*, 50 Cal.App.2d 211, 217 [122 P.2d 678]; *Estate of Sullivan*, 86 Cal.App.2d 890, 895 [195 P.2d 894]; *Ng* v. *Warren*, 79 Cal.App.2d 54, 57 [179 P.2d 41].) Plaintiff does not quarrel with this established principle, but urges that "the viewing of the *locus in quo* by the trial Judge . . . cannot be used as productive of evidence that is contrary to all of the other evidence in the case." It is asserted by plaintiff that in the cases in which this principle has been applied there was, in actuality, a conflict in the testimony and some other evidence in support of the findings. Plaintiff's

contention is without merit. It is emphatically stated by the cases that the information obtained by the judge when he views the *locus in quo* by consent of the parties "is *independent* evidence that can be taken into consideration in determining the issues of the case" (italics added) (*Hatton* v. *Gregg*, 4 Cal.App. 537, 540 [88 P. 592]; *Gibson Properties Co.* v. *City of Oakland*, 12 Cal.2d 291, 297 [83 P.2d 942]; *Lauder* v. *Wright Investment Co.*, 126 Cal.App.2d 147, 151 [271 P.2d 970]), and that "what is then seen is itself evidence and *may be used alone* . . . to support such findings." (Italics added.) (*Noble* v. *Kertz & Sons Feed etc. Co.*, *supra*, p. 159; *Stegner* v. *Bahr & Ledoyen, Inc.*, *supra*, p. 225; *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 366 [203 P.2d 37].) As independent evidence the judge's observations were of equal dignity to the other evidence in the case; they could be weighed by him against all other evidence even though such evidence was, in its entirety, contradictory of such observations. In *Hatton*, the appellate court noted that the one-time rule in this state as announced in *Wright* v. *Carpenter*, 49 Cal. 607, that the view of premises was not independent evidence because it would permit the trier of fact to base a finding or verdict wholly on its own inspection of the premises regardless of an overwhelming weight of evidence to the contrary was set side by *People* v. *Milner*, 122 Cal. 171 [54 P. 833], which held that information obtained from a view of the premises is independent evidence. In *Lauder*, the reviewing court, in holding that a view by the judge of the premises and the topography of the surrounding area constituted independent evidence which could be considered as substantial evidence in support of his findings, stated as follows: "While there was evidence, principally opinion in character, on behalf of plaintiff which would have supported a different finding, the trial judge was not required to accept it rather than the on-the-spot factual picture his own personal inspection of the area revealed. It was his responsibility also to draw any reasonable inferences from the situation thus disclosed, and to make a proper deduction from the facts. *In practical effect, the court simply resolved the conflict between what he saw and the testimony he heard.* This, of course, is binding on a reviewing court." (Italics added.) (P. 151.)

Plaintiff relies upon *Fendley* v. *City of Anaheim*, 110 Cal. App. 731 [294 P. 769]. That case is readily distinguishable from the case at bench. There the plaintiffs claimed that the

defendant's operation of a power plant jarred their residences and caused damage. The evidence establishing that most of the discomfort occurred at nighttime was uncontradicted. The trial court inspected the premises in the daytime, and then made a record of its observations in open court to the effect that it discovered vibrations, the presence of which were made manifest in the same manner the witnesses had described, and that it also observed a rattling of windows. The trial court found, however, that the operation of the plant caused no discomfort to the plaintiffs. In reversing the judgment the appellate court held that under the circumstances the inspection of the premises by the court could not add sufficient weight to sustain the questioned finding. While it is true that in *Fendley* the reviewing court found that the evidence did not support the findings of the trial judge despite the fact that he had viewed the premises, the rationale of the holding was that the judge's observations, which became a part of the record, were inconsistent with the findings of fact he made, and that the inspection of the premises in the daytime was an insufficient basis to sustain his finding.

We do not have a situation such as that in *Fendley* in the present case. We are not here faced with a view by the judge of the *locus in quo* under circumstances different from those which were the subject of discussion at the trial. In the present case the physical criteria for finding the existence or nonexistence of a watercourse—namely, channel, bed and sides or banks—were clearly visible to the judge at the time of his visit to the property. The observations of the trial judge were not made a part of the record so we have no way of knowing what facts the judge may have acquired in viewing the premises. Thus the rule of *1st Olympic Corp.* v. *Hawryluk, supra,* 185 Cal.App.2d 832, comes into play, i.e., when what the judge sees is not made part of the record on appeal, an appellate court must assume that the evidence acquired by such view is sufficient to sustain the finding in question. Accordingly, we are entitled to assume that the trial court looked at the terrain and the physical topography of the premises and saw no streams, containing a definite or established channel bed, sides or banks, leading into the reservoir in question. We are also entitled to assume that runoff waters were present on the land.[3] Even if we were

---

[3] It should be here noted that in an affidavit in support of plaintiff's motion for new trial it is averred that it rained during the course of

not entitled to indulge in this assumption, the presence of runoff waters or a live stream was not indispensable to the trial judge's observations because, as we have hereinbefore noted, a watercourse may exist even though it be dry. Suffice it to say, there was undisputed evidence that the waters which were captured in the reservoir were runoff waters produced during the rainy season. Under the circumstances, the trial judge was warranted in applying such uncontradicted evidence to his own observations of the physical topography of the premises in determining whether any watercourse led or fed into the reservoir.

The only California case in which a finding supported only by a jury view, and contrary to all the other evidence, was held to be inadequate is the case of *People* ex rel. *Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101 [223 P.2d 37]. In this condemnation proceeding, several experts testified as to the value of the condemned property, the highest evaluation being $1,500 on one parcel and $1,326 on another. In the jury's verdict, the parcels were valued at $2,800 and $3,000, respectively. On appeal, the plaintiff contended that the evidence was insufficient to support the findings. The defendant argued that the knowledge acquired by the jury in viewing the property could be used by itself to support the findings. The appellate court held that the view of the premises could not be the sole basis of a condemnation award, the rationale being that value must be arrived at from the opinion of well-informed persons, and that in a condemnation proceeding the view of the premises is merely corroborative evidence of the quantitative oral testimony. We are satisfied that the holding in *McCullough* is limited to the issue of property valuation in a condemnation proceeding because of the expert testimony necessarily required in such a proceeding. The existence of a watercourse is not a matter necessarily left to expertise but is a matter upon which a layman can make a determination. Accordingly, the rationale behind the *McCullough* holding is not applicable to the case at bench.

*Stipulation or Admission on the Existence of a Watercourse*

In its closing brief plaintiff makes the argument that de-

---

the trial and that a witness had testified during the trial that he found between 3 and 4 miners inches of water running down one watercourse into the reservoir. At the hearing of the motion for new trial plaintiff's counsel conceded that there had been between 8 and 10 inches of rainfall on the weekend previous to the judge's view.

fendants by their pleadings and several statements made during the course of the trial admitted and stipulated to the fact that their dam was on a watercourse. The assertion is also made that the pretrial conference order eliminated from the trial the issue of the existence of a watercourse. Accordingly, plaintiff contends that the trial court had no right to make a finding that there was no watercourse. These contentions are without merit. With respect to the pleadings, the record discloses that in their answer defendants defended on alternative theories—one, that their dam collects vagrant waters and, the other, that they have riparian rights to the water on their property. The former theory of defense is based on the denial of the existence of a watercourse, while the latter impliedly admits the same fact. ■ It is well established in California that several defenses may be pleaded in an answer though inconsistent in legal thoery or in fact. (*Calexico Lumber Co.* v. *Emerson,* 54 Cal.App. 239, 241 [201 P. 612]; *Banta* v. *Siller,* 121 Cal. 414, 417 [53 P. 935]; *Oppenheimer* v. *Deutchman,* 119 Cal.App.2d 450, 453 [259 P.2d 457]; 2 Witkin, Cal. Procedure (1954) § 533, p. 1526.) The statements of counsel for defendants to the court, as disclosed by the reporter's transcript from which plaintiff gleans the claimed admission or stipulation, when taken in proper context, clearly indicate that defendants were relying on these alternate theories of defense.[4]

Adverting to the pretrial order, we find that in the narrative of the contentions of the parties it is stated that defendants contend "that said reservoir has no live stream flowing therein and collects water only in times of heavy rainfall; that defendants are merely capturing surface water and are not diverting water from any stream; . . . ." It is apparent from a reading of the transcript, moreover, that the main issue presented to the court was whether the waters

---

[4]In the colloquy between court and counsel we find this statement by counsel which follows the language relied upon by plaintiff, to wit: "Well, to amplify it maybe a little bit, either the waters are vagrant waters, and if they are then we have the right to collect them. That's our position. If the Court's view is that they are riparian, or that is if the Court's view is that they are a water course, and that while that water course is dry a portion of the year, a very great portion of the year, nevertheless if the Court takes the view that the periods during which the water flows in the water course are regularly recurring periods, according to the rainy season each year and then our lands are riparian to the stream, and it is our position that we have the right of reasonable use of the waters.''

in question constituted a watercourse. ▮▮▮ Although the pretrial order is not specific as to the issues presented, and assuming *arguendo* that this issue was not delineated in the pretrial order, it is nevertheless settled law that where an issue is litigated at the trial without objection or moving for a modification of the pretrial order the right to complain that an issue was not before the court is waived. (*Palmer* v. *Financial Indem. Co.*, 215 Cal.App.2d 419, 434 [30 Cal. Rptr. 204]; *Gordon* v. *Reynolds*, 187 Cal.App.2d 472, 475 [10 Cal.Rptr. 73].)

## Request for Specific Findings

It is also contended by plaintiff that it was improper for the trial court to deny its request for specific findings.[5] It asserts that the basis of the court's denial was that the request was not timely. The minutes of the court reflect that the request for specific findings was denied without any statement as to the basis for the ruling. The timeliness of the request is not disputed by defendants, nor is it reflected in the record that it was not filed within the period specified in Code of Civil Procedure section 634. We shall therefore confine our inquiry to whether these "specific findings" are a proper subject matter for findings of fact. ▮▮▮ We are satisfied that the trial court could properly reject the request

---

[5] The specific findings requested by plaintiff are as follows:

"1. A finding determining how the water drained from the watershed existing above the reservoir of the defendants, found its way to get into said reservoir and whether this was the customary route followed by said water in reaching the reservoir, and if it is or was not the customary route, what other route was or could be used and when.

"2. A finding as to the physical characteristics of the area from the easterly end of the reservoir to and including the said watershed and also including the description of the formation of the base or area forming the juncture of the interior bases of the three ranges of hills extending back from the reservoir.

"3. A finding as to the formation of the floor of the reservoir including a finding as to whether water draining from the said watershed. has created any channels in the said floor of said reservoir and if so whether said channels merge to form one channel at a point above the site of the dam itself but within the reservoir area.

"4. A finding as to where the water draining from the watershed hereinbefore mentioned would go and the course it would follow if the defendants' dam had never been constructed and if the course it would have followed in such event would have been in a channel or channels or course customarily used by the run-off from the watershed and if not, then the course customarily followed by said run-off.

"5. A finding as to whether the Court in viewing the area in which the dam and reservoir is located was able to see or determine the floor of the reservoir and its formation and whether any channel existed or had existed in the said floor of said reservoir."

on the basis that what plaintiff calls ''specific findings'' of fact are in reality a statement of evidentiary facts.　　It is the established rule in California that findings should properly state only ultimate and not probative or evidentiary facts (*Kurtz* v. *Kurtz,* 189 Cal.App.2d 320, 322-323 [11 Cal. Rptr. 230] ; *Pellegrino* v. *Los Angeles Transit Lines,* 79 Cal. App.2d 40, 42-43 [179 P.2d 39]), and that the finding of the ultimate fact includes the finding of all probative facts necessary to sustain such ultimate finding. (*Broadway Fed. etc. Loan Assn.* v. *Howard,* 133 Cal.App.2d 382, 396 [285 P.2d 61] ; *Pellegrino* v. *Los Angeles Transit Lines, supra,* p. 43.)　　In the present case the findings made by the court, and hereinbefore set out in the first paragraph of footnote 1 (p. 4), were specific findings of facts in the form of ultimate facts, and, as such, include the finding of all probative facts necessary to sustain such ultimate finding.

## *Denial of Motion for New Trial*

Plaintiff moved for a new trial on all of the statutory causes provided in section 657 of the Code of Civil Procedure. In its briefs it asserts, however, that its motion was based principally on the following grounds: (1) Surprise which could not have been anticipated; (2) that the evidence does not support the findings, and (3) irregularity in the proceedings of the court in that the viewing of the premises by the trial court was without the presence of counsel for plaintiff. What we have already said concerning the sufficiency of the evidence to support the findings is applicable here.　　As for the bald assertion that it was error for the trial court to view the premises in the absence of plaintiff's counsel, plaintiff does not cite or furnish any authority for this contention. It was plaintiff's duty to do so if it intends to point out error. We are not obliged to perform the duty resting upon counsel. (*Estate of Hoffman,* 213 Cal.App.2d 635, 639 [29 Cal.Rptr. 60] ; *Kyne* v. *Eustice,* 215 Cal.App.2d 627, 635 [30 Cal.Rptr. 391].)　　We are satisfied from a reading of the cases considered in connection with the evidentiary effect of the judge's view of the premises, that there is no requirement, where such view is with the consent of the parties, that it be made in the presence of the parties or their counsel.　　Plaintiff's claim of surprise is predicated upon the determination by the trial court that there were no watercourses leading into the reservoir. The asser-

tion is made that counsel for plaintiff could not anticipate that the trial court would make a finding contrary to the "overpowering mass of evidence" as a result of its viewing of the *locus in quo*. It is apparent that plaintiff confuses "surprise" in its ordinary sense with its meaning in the legal sense as contemplated by Code of Civil Procedure section 657, subdivision 3. "Surprise," as a ground for new trial, denotes some condition or situation in which a party to a cause is unexpectedly placed, to his injury, without any negligence of his own which ordinary prudence could not have guarded against. (*Jennings* v. *American President Lines*, 61 Cal.App.2d 417, 429 [143 P.2d 349, 144 P.2d 54]; *Kauffman* v. *De Mutiis*, 31 Cal.2d 429, 432 [189 P.2d 271].)

 The view of the *locus in quo* was made upon plaintiff's request. Plaintiff's counsel knew or should have known that what the trial judge saw would be evidence in the case and that plaintiff would be bound by a finding predicated upon such evidence. Had the trial judge made a finding in plaintiff's favor based on such view it would not be now complaining of the lower court's determination. Accordingly, it is apparent that plaintiff's claim is one based upon disappointment rather than surprise. Much reliance is placed by plaintiff upon photographs accompanying the affidavit supporting its motion for new trial. It asserts that these photographs unequivocally show channels of watercourses and that therefore we are entitled to assume either that the trial judge did not observe or see these conditions, or that if he did see them, he chose to ignore them entirely. We have no way of knowing what the judge saw; nor do we have any way of knowing whether these pictures depict the conditions which were observed by the judge. These photographs were not in evidence at the trial, but were taken *after* the trial and over three months after the judge viewed the premises.[6] Photographs accompanying the counteraffidavit of defendant Blair were also before the court, and purported to show the absence of channels and that no water was running into said reservoir excepting for a very minor seepage at various points.[7] We must assume that the judge looked at all these photographs when he passed upon the motion for new trial and that he correlated them with what he saw when he visited the premises.

[6]The subject photographs were taken on January 27, 1963, February 1, 1963, and February 8, 1963.

[7]These photographs were taken on February 25, 1963.

The granting or denial of a motion for new trial on the ground of surprise is largely a matter of discretion. (*Adoption of Curtis,* 195 Cal.App.2d 179, 184 [15 Cal.Rptr. 331]; *Wilson* v. *Kopp,* 114 Cal.App.2d 198, 206 [250 P.2d 166].) Under the circumstances, no abuse of discretion appears.

It should be pointed out, moreover, that plaintiff also moved for a new trial on the ground of newly discovered evidence, and, that, in connection with this ground, it presented the same photographs as it had in support of its motion on the basis of surprise. It is apparent that these photographs did not constitute newly discovered evidence which plaintiff could not, with reasonable diligence, have discovered and produced at the trial (Code Civ. Proc., § 657, subd. 4), but were photographs taken *after* the trial. It is equally apparent that photographs of the same terrain and topography could have been taken during the trial. Plaintiff did not do so. Instead it chose to rely on the less satisfactory aerial photographs aforementioned. The claim of newly discovered evidence as a ground for new trial is uniformly looked on by the courts with distrust and disfavor because the policy of the law requires a litigant to exhaust every reasonable effort to produce at his trial all existing evidence on his behalf. (*People* v. *Loar,* 165 Cal.App.2d 765, 777 [333 P.2d 49]; *Akopiantz* v. *Board of Medical Examiners,* 190 Cal.App.2d 81, 93 [11 Cal.Rptr. 810].) It is also well settled that an appellate court rarely interferes with the decision of a trial court on the grounds of newly discovered evidence and that the exercise of the court's discretion in granting or denying a motion for a new trial on that ground will not be disturbed except in a case of manifest abuse. (*Teixeira* v. *Domingos,* 151 Cal.App.2d 380, 384 [311 P.2d 634]; *Akopiantz* v. *Board of Medical Examiners, supra,* p. 93.) We find no such abuse of discretion in the instant case.

The judgment is affirmed.

Sullivan, P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied January 11, 1965.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.